ALEX SCHECHTER CORP. *v.* UNITED STATES

No. 4657.—Invoices dated Paris, France, October 17, 1933, etc.
Entered at New York October 30, 1933, etc.
Entry No. 37133, etc.

(Decided October 14, 1939)

*Sharretts & Hillis* (*Arthur Tallman* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the defendant.

McClelland, Presiding Judge: These appeals to reappraisement originally came on to be heard before me and on March 2, 1939, I rendered an opinion (Reap. Dec. 4532) and ordered them restored to the calendar for the reason that there was insufficient evidence before me upon which to base a finding of value. Additional evidence has been introduced, and the cases are again before me for decision.

There is no question but that the proper basis of value of the merchandise is United States value, which is defined in section 402 (e) of the Tariff Act of 1930 as—

—the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchase goods.

As I stated in my original opinion—

The basic United States values of the merchandise in issue, that is to say—

—the price at which such or similar imported merchandise [was] freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade—

were the *per se* entered values. From these values the appraiser deducted 2 percent cash discount and 3 percent charges, presumably including "the cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery," and 30 percent duty. Since the merchandise was acquired by purchase, the only question remaining to be decided is the amounts deductible for profit and general expenses.

In arriving at the amounts to be allowed for general expenses and profit under the statute counsel seem to have agreed that the general expenses and profit made by the plaintiff corporation on merchandise such as that in issue may be used as a basis.

I have before me as Exhibit 1 in Suit 4063, the record in which was incorporated as part of the record herein, a profit and loss statement of the plaintiff corporation covering the period from November 1, 1933, to February 1934, Exhibit 2, a similar statement covering the period from March 1, 1934, to October 31, 1934, and Exhibit 1 in the instant cases, covering the period from November 1, 1934, to July 31, 1935. The dates of exportation of each of the shipments involved fall within the period covered by the three statements.

It was held in the test case, *Alex. Schechter Corp.* v. *United States*, finally decided by the Court of Customs and Patent Appeals and reported in 25 C. C. P. A. 107, T. D. 49240, based upon Exhibit 1 in that case which, as hereinbefore stated, forms part of the evidence before me, that the general expenses during the period covered thereby,

November 1, 1933, to February 28, 1934, were 4.3 per centum and that the net profit was 20 per centum of which only the statutory allowance of 8 per centum could be used in the determination of United States value. The date of exportation of the merchandise covered by reappraisement 109509-A was October 18, 1933, and although that date is thirteen days prior to the beginning of the period covered by the profit and loss statements mentioned above, the evidence indicates that the same conditions as to general expenses and profit obtained at that time. The date of exportation of the merchandise covered by reappraisement 109759-A was February 10, 1934, which is within the period covered by Exhibit 1 in the incorporated case.

As to all of the reappraisement appeals here involved I find the United States value, as that value is defined in section 402 (e) of the Tariff Act of 1930, to be the proper basis for the determination of the value thereof, and that such value on the respective dates of exportation was the *per se* entered value, less 2 per centum discount, 3 per centum charges, 30 per centum duty, and as to the two reappraisement appeals enumerated above 4.3 per centum for general expenses, and 8 per centum for profit.

Exhibit 2 in the instant case covers the period from March 1, 1934, to October 31, 1934, during which the merchandise covered by the following appeals was exported: 109750-A, 109751-A, 109752-A, 109753-A, 109754-A, 109755-A, 109756-A, 109757-A, 109758-A, 109760-A, 109761-A, 109762-A, 109763-A, 109764-A, 109765-A, 110007-A, 114007-A, and 114008-A. Net sales for the period are indicated on Exhibit 2 as $333,244.73, while the total expenses are shown as $25,042.83. To the latter must be added an item of $818.18 for bad debts written off during the period, and after such addition I find the percentage of general expenses to sales during the period to have been 7.8 per centum.

Exhibit 2 likewise shows, an average sales price during the period of $11.58 per dozen against a net cost of $10.88 (after adjusting the general expenses as above). The percentage of profit therefore is 6 per centum.

Exhibit 2 was drawn on the same basis as Exhibit 1 in the incorporated case, and upon it and the other evidence before me I find that the deductions allowable for general expense is 7.8 per centum and for profit 6 per centum.

Exhibit 1 in the instant case covers the period from November 1, 1934, to July 31, 1935, during which the merchandise covered by the remainder of the appeals before me was exported. In my opinion restoring the cases to the docket I questioned the regularity as a legitimate business expense of two items thereon, the first an item of

$4,024.09 for "Drawings of Alex Schechter," and the second an item of $1,723.60 for "Provision for Bad Debts."

It appears that the item of "Drawings of Alex Schechter" covers amounts drawn by Mr. Schechter, an officer of the corporation, over the sum to which he was entitled as commission for buying raw furs. Although such drawings were improper the total was regarded as uncollectible by the accountant and was considered an expense of the business. I am unable to sustain this view. There can be no doubt but that in making provision in section 402 (e), *supra*, for "a reasonable allowance for general expenses" Congress intended that only the *usual* expenses encountered in the carrying on of a given business would come within the scope of the language used. The item under consideration is in no sense a usual expense of doing business in such merchandise as that here involved, and cannot therefore be included in the allowance for general expenses.

So far as the second item, that for $1,723.60 for "Provision for Bad Debts" is concerned, it appears that the bad debts actually written off during the period were $4,727.27. The item for "Provision for Bad Debts" is therefore disallowed, and allowance is made for bad debts actually written off as above.

Total expenses are shown on Exhibit 1 as $38,408.73. Deducting therefrom $4,024.09 covering the item of "Drawings of Alex Schechter" and $3,946.66 covering an item of buying commissions which the statute does not permit to be allowed on purchased goods, the total becomes $30,437.98. Adding to this the sum for bad debts written off, $4,727.27, the total expenses allowable are $35,165.25, and the percentage thereof to net sales of $543,767.03 for the period is 6.4 per centum.

The cost of goods sold during the period is shown as $480,124.09. Deducting this sum from the sales for the period, $543,767.03, leaves a gross profit of $63,642.94. Deducting the total allowable expenses therefrom leaves a net profit of $28,477.69, and the percentage of profit allowable for the period is therefore 5.2 per centum.

I therefore find that the deduction allowable in the cases last mentioned are 6.4 per centum for general expenses and 5.2 per centum for profit.

Judgment will issue accordingly.