(Reap. Dec. 8278)

E. H. CORRIGAN v. UNITED STATES

Entry Nos. 3009; 3770.

(Decided on remand [Abstract 57332] January 14, 1954)

*Sharretts, Paley & Carter* (*Howard C. Carter* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the defendant.

EKWALL, Judge: These cases, now before me on remand, are appeals for reappraisement of dehydrated garlic powder exported from Mexico on December 2, 1943, and January 6, 1944.

When these cases were originally before the trial court (Cline, J.), it was held that there was no foreign or export value for the merchandise and that the plaintiff had not sustained the burden of proving United States value or any other value for the merchandise. Therefore, the appraised values were affirmed. *E. H. Corrigan v. United States*, 25 Cust. Ct. 424, Reap. Dec. 7879. The grounds for holding that no United States value had been established were (1) that offers and sales of the imported merchandise made prior to the arrival of the goods in the United States could not be used as a basis for determining that value and (2) that the evidence in regard to certain trial lots previously imported was insufficient since the price at

which they were sold was not shown and the quantities were not wholesale quantities.

This decision was affirmed by the first division of this court. *E. H. Corrigan* v. *United States*, 27 Cust. Ct. 436, Reap. Dec. 8046.

On appeal to the Court of Customs and Patent Appeals, the decision of the appellate division was reversed and the cases remanded for restudy of the evidence in conformity with the court's holding on the law. *E. H. Corrigan* v. *United States*, 40 C. C. P. A. (Customs) 171, C. A. D. 514.

Accordingly, the first division of this court has remanded the cases to me for further proceedings consistent with the opinion of the court of appeals.

After affirming the findings of the appellate division in connection with trial lots received prior to the within importations, the Court of Customs and Patent Appeals stated in its decision (p. 182):

> Returning now to the importations immediately involved, we feel constrained to hold that offers of sale and sales for future delivery properly may be taken into consideration in determining United States value as defined in section 402 (e), *supra*, in cases where the facts and circumstances show that such procedure is followed in the ordinary course of trade, and the other requisite statutory elements are present.

In a clarification of its decision written after a petition for rehearing, the court held that, as to the first shipment, imported on December 2, 1943, the sales and offers of sale made prior to the importation should have been taken into consideration in determining United States value, and, that, as to the second shipment, imported on January 6, 1944, sales and offers of sale of merchandise from either importation should have been considered.

As to the first shipment, plaintiff's witness Lloyd M. Trafford testified that a portion of it was sold to H. C. Brill & Co., Newark, N. J., on September 24, 1943, and the balance to McCormick & Co. of Baltimore on October 5 and October 19, 1943. According to the witness, the sales had been based on samples, and the price in each instance had been 55 cents per pound, delivered, packed, the O. P. A. ceiling price. The merchandise had also been offered to other purchasers without restriction.

Mr. Trafford listed the following expenses which were incurred in connection with this shipment:

| | |
|---|---|
| Transportation from Laredo to purchasers' respective places of business | $596. 13 |
| Customs entry and forwarding | 60. 00 |
| Weighing, sampling, and recoopering | 12. 50 |
| Telegraphic charges | 11. 45 |
| Brokerage | 454. 70 |

The witness stated that the profit on the shipment amounted to $2,267.71, or more than 8 per centum; that overhead and general

expenses were between 15 and 18 per centum, and were never less than 15 per centum.

A portion of the second shipment, according to Mr. Trafford, had been sold on December 3, 1943, to Stickney & Poor, Boston, Mass., for 55 cents per pound, delivered. The balance was sold at the same price to the following purchasers: H. C. Brill, Newark, N. J., on January 27, 1944; M. Bussler, New York City, on February 5, 1944; and Jacobus Frank, New York City, on April 20, 1944. The following expenses were incurred:

Transportation from Laredo to purchasers' respective places of business_ $260. 36
Customs entry_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _   24. 50
Weighing, sampling, and recoopering_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _   22. 50
Storage and labor charges_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _   26. 75
Brokerage_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _   194. 15

The witness stated that the profit on the shipment was more than 8 per centum and that the general expenses were the same as those in connection with the first shipment.

It appears from the record that the merchandise was freely offered to all purchasers for future delivery and that the offers and sales were made at times near enough to the respective dates of exportation and under such circumstances as to reflect the price of the goods on those dates. In view of the holding of the court of appeals in this case, I find that the offers and sales of the within merchandise for future delivery must be considered in determining the United States value thereof.

Section 402 (e) of the Tariff Act of 1930, as amended, defines United States value as follows:

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

In the instant case, it appears that the price at which the merchandise was freely offered for sale to all purchasers, packed ready for delivery during the period from September 24, 1943, to April 20, 1944, was 55 cents per pound. It is this price, therefore, less the deductions permitted by the statute, that constitutes United States value.

Since it has been established that the actual profits made on the sale of the merchandise were more than 8 per centum of the selling

price and that the general expenses were more than 8 per centum thereof, allowance of 8 per centum for each of these items is proper. *United States* v. *Beer & Co.*, 15 Ct. Cust. Appls. 140, T. D. 42215; *United States* v. *American Aniline Products, Inc.*, 22 C. C. P. A. (Customs) 380, T. D. 47399.

The statute also permits deductions for "cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery." Since there was evidence that New York City was one of the principal markets for this merchandise, and, since the purchasers' respective places of business were in or near New York City, the deductions claimed for transportation may be allowed. *Universal Carloading & Distributing Co., Inc.* v. *United States*, 4 Cust. Ct. 591, Reap. Dec. 4712, affirmed in 4 Cust. Ct. 827, Reap. Dec. 4894.

Likewise, the items for customs entry and forwarding are a part of the necessary expenses from the place of shipment to the place of delivery and are deductible.

However, the other items of expense, listed above, are not properly deductible under the terms of the statute. Charges for repacking to put merchandise in condition for delivery may not be subtracted in determining United States value, which is based on the price of the goods packed ready for delivery. *Carey & Skinner* v. *United States*, 13 Ct. Cust. Appls. 7, T. D. 40848. Allowances for weighing and for telegraphic expenses are not, in fact, claimed by the importer. (See calculations on page 12 of brief filed before the appellate division.)

It appears from the testimony that the expenses for storage and labor were incurred at the place of delivery. Therefore, they may not be deducted. *Johnson & Co.* v. *United States*, 13 Ct. Cust. Appls. 626, T. D. 41480.

According to the record, the items for brokerage were fees of 5 per centum paid to spice brokers in connection with the sale of the merchandise. Such items are not a part of the necessary expenses from the place of shipment to the place of delivery and are disallowed. *Star Import Company* v. *United States*, Reap. Circ. 2370, reversed on other grounds, Reap. Circ. 2670; former judgment affirmed on remand, Reap. Circ. 2876, affirmed in 65 Treas. Dec. 1678, Reap. Dec. 3286; *United States* v. *C. J. Tower & Sons*, 68 Treas. Dec. 1255, Reap. Dec. 3650. Section 402 (e) of the Tariff Act of 1930, as amended, by its terms permits the deduction of a commission only where the goods have been secured other than by purchase, in which case no allowance may be made for profit or general expenses. Commissions or brokerage might be considered a part of general expenses, but the maximum allowance therefor has already been made. See *United States* v. *Alfred Dunhill of London, Inc.*, 32 C. C. P. A. (Customs) 187, C. A. D. 305, including commissions as a part of the "usual general expenses" referred to in section 402 (f), and *Alex Schechter Corp.* v. *United States*,

3 Cust. Ct. 586, Reap. Dec. 4657, stating that the phrase "a reasonable allowance for general expenses" in section 402 (e) means the usual expenses encountered in carrying on a business.

The results of calculations based on the above figures and the advisory classification and other information set out in the official papers are as follows:

### Reappraisement No. 160603–A

| | | |
|---|---|---|
| Selling price | $0. 55 | per pound |
| Less 8 per centum for profit | . 0440 | |
| | $0. 5060 | |
| Less 8 per centum for general expenses | . 0440 | |
| | $0. 4620 | |
| Less transportation and customs entry ($656.13 divided by 16,500 pounds) | . 0397 | |
| Value, including duty | $0. 4223 | |
| Value, less duty at 35 per centum ad valorem ($0.4223 divided by 1.35) | $0. 3128 | |

### Reappraisement No. 160604–A

| | | |
|---|---|---|
| Selling price | $0. 55 | per pound |
| Less 8 per centum for profit | . 0440 | |
| | $0. 5060 | |
| Less 8 per centum for general expenses | . 0440 | |
| | $0. 4620 | |
| Less transportation and customs entry ($284.86 divided by 7,062 pounds) | . 0403 | |
| Value, including duty | $0. 4217 | |
| Value, less duty at 35 per centum ad valorem ($0.4217 divided by 1.35) | $0. 3123 | |

On the basis of these calculations, I hold that the United States value of the first shipment herein is $0.3128 per pound and that of the second shipment $0.3123 per pound.

On the record herein, I find as facts:

1. That the merchandise consists of garlic powder exported from Mexico on December 2, 1943, and January 6, 1944.

2. That on said dates of exportation no such or similar merchandise was being freely offered for sale for home consumption in Mexico, or for exportation to the United States, in accordance with the provisions of section 402 (c) or (d) of the Tariff Act of 1930, as amended.

3. That the merchandise involved herein was freely offered for sale to all purchasers in the principal market of the United States at 55 cents per pound, packed, at or before the respective dates of exportation thereof, for future delivery; that the first shipment was

sold to different purchasers on September 24, 1943, and October 5 and 19, 1943, at that price; and that the second shipment was sold to different purchasers on December 3, 1943, January 27, 1944, February 5, 1944, and April 20, 1944, at that price.

4. That the profits on these shipments and the general expenses each amounted to more than 8 per centum of the selling price; that the expenses for transportation and customs entry for the first shipment amounted to $0.0397 per pound; that such expenses for the second shipment amounted to $0.0403 per pound; that the merchandise was advisorily classified under paragraph 775 of the Tariff Act of 1930 at the rate of 35 per centum ad valorem.

5. That deducting the amounts of the items mentioned in the above paragraph from the selling price in the United States results in a value of $0.3128 per pound for the first shipment and $0.3123 per pound for the second shipment.

I conclude as matters of law:

1. That there is no foreign value or export value, as defined in section 402 (c) and (d) of the Tariff Act of 1930, as amended, for the merchandise involved herein.

2. That the United States value, as that value is defined in section 402 (e) of the Tariff Act of 1930, as amended, is the proper basis for the determination of the value of the merchandise here involved.

3. That such value is the selling price in the United States of 55 cents per pound, less allowances for profit, general expenses, cost of transportation and customs entry, and duty.

4. That other claimed items of expense are not properly deductible under the terms of the statute.

5. That the United States value of the first shipment, made on December 2, 1943, is $0.3128 per pound, and that of the second shipment, made on January 6, 1944, is $0.3123 per pound.

Judgment will be rendered accordingly.