(Reap. Dec. 8355)

E. H. CORRIGAN *v.* UNITED STATES

Entry Nos. 3009; 3770.

(Decided on rehearing [Reap. Dec. 8278] November 24, 1954)

*Sharretts, Paley & Carter* (*Howard C. Carter* and *Joseph F. Donohue* of counsel) for the plaintiff.

*Warren E. Burger,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

EKWALL, Judge: These appeals for reappraisement are before the court pursuant to an order granting a motion for a rehearing and reconsideration of the decision and judgment of this court rendered on January 14, 1954 (*E. H. Corrigan* v. *United States,* 32 Cust. Ct. 561, Reap. Dec. 8278), and restoring the case to the calendar "for the purpose of permitting the parties to submit evidence establishing the cost of transportation from Laredo to the terminal in New York." *E. H. Corrigan* v. *United States,* 32 Cust. Ct. 599, Reap. Dec. 8295.

These cases are appeals for reappraisement of dehydrated garlic powder exported from Mexico on December 2, 1943, and January 6, 1944. When they were originally before the trial court (Cline, J.), it was held that there was no foreign or export value for the merchandise and that the plaintiff had not sustained the burden of proving United States value or any other value for the merchandise, and the appraised values were affirmed. *E. H. Corrigan* v. *United States*, 25 Cust. Ct. 424, Reap. Dec. 7879. The grounds for holding that no United States value had been established were (1) that offers and sales of the imported merchandise made prior to the arrival of the goods in the United States could not be used as a basis for determining that value and (2) that the evidence in regard to certain trial lots previously imported was insufficient since the price at which they were sold was not shown and the quantities were not wholesale quantities.

This decision was affirmed by the first division of this court. *E. H. Corrigan* v. *United States*, 27 Cust. Ct. 436, Reap. Dec. 8046.

On appeal to the Court of Customs and Patent Appeals, the decision of the appellate division was reversed and the cases remanded for restudy of the evidence in conformity with the court's holding on the law. *E. H. Corrigan* v. *United States*, 40 C. C. P. A. (Customs) 171, C. A. D. 514. After affirming the findings of the appellate division in connection with trial lots received prior to the within importations, the court of appeals stated in its decision (p. 182):

Returning now to the importations immediately involved, we feel constrained to hold that offers of sale and sales for future delivery properly may be taken into consideration in determining United States value as defined in section 402 (e), *supra*, in cases where the facts and circumstances show that such procedure is followed in the ordinary course of trade, and the other requisite statutory elements are present.

In a clarification of its decision written after a petition for rehearing, the court held that, as to the first shipment, imported on December 2, 1943, the sales and offers of sale made prior to the importation should have been taken into consideration in determining United States value, and, that, as to the second shipment, imported on January 6, 1944, sales and offers of sale of merchandise from either importation should have been considered.

Thereafter, the first division of this court remanded the case to me for further proceedings consistent with the opinion of the court of appeals (Abstract 57332). Accordingly, a decision and judgment were rendered on January 14, 1954, in which a United States value was found for each of the two shipments. *E. H. Corrigan* v. *United States*, 32 Cust. Ct. 561, Reap. Dec. 8278. That decision and judgment have been set aside and the case restored to the calendar, as stated above.

The case has been resubmitted on the record heretofore made and on the following stipulation of counsel:

IT IS HEREBY STIPULATED AND AGREED between counsel, subject to the approval of the Court, that the merchandise involved in the above reappraisement appeals was released from customs custody at Laredo, Texas to the plaintiff or its representatives and that while in the sole custody and control of the plaintiff or its representatives said merchandise was shipped from Laredo to either Baltimore, Maryland, Newark, New Jersey or the terminal in New York.

IT IS FURTHER STIPULATED AND AGREED that the cost of transportation of the garlic powder in issue from Laredo, Texas, to the terminal in New York was $3.07 per 100 lbs. (gross weight) plus 3 per centum federal transportation tax; that in the case of Reappraisement No. 160603–A said cost was $625.71 although the actual cost of transportation charges to Baltimore and Newark was $596.13; and that in the case of Reappraisement No. 160604–A said cost was $260.36.

IT IS FURTHER STIPULATED AND AGREED that this stipulation is without prejudice to any argument advanced or to be advanced by the United States, defendant, with respect to the propriety of deducting such costs in determining the United States value of the merchandise covered by said appeals for reappraisement and does not in any way constitute a concession that such amounts are properly deductible in determining United States value.

\*         \*         \*         \*         \*         \*         \*

On this rehearing, the Government contends, first, that no United States value can be found for the merchandise on the ground that the evidence does not show that the method of doing business by the importer herein constituted the ordinary course of trade and that other requisite statutory elements of United States value have not been established, and, second, that if a United States value is found, freight charges from Laredo to New York are not deductible. Plaintiff maintains the contrary.

In my decision of January 14, 1954, *supra*, I found that the offers and sales of the within merchandise for future delivery were to be considered in determining the United States value thereof, since it appeared that such merchandise was freely offered to all purchasers for future delivery and that the offers and sales were made at times near enough to the respective dates of exportation and under such circumstances as to reflect the prices of the goods on those dates. I found further that the price at which the merchandise was freely offered for sale to all purchasers, packed ready for delivery, was 55 cents per pound, and that that price, less the deductions permitted by the statute, constituted United States value. Except as to the amount of the deductions permitted, there is nothing in the record or the arguments now presented to warrant a different holding. It appears from the testimony of Ernesto Ibarra that there were no manufacturers of dehydrated garlic powder in Mexico other than the manufacturer herein and that its entire output was sold to Charles T. Wilson Co., Inc. According to the vice president of that company,

sales of such merchandise were made by sample for future delivery. Therefore, that method was the ordinary course of trade for the sale of Mexican dehydrated garlic powder. Sales by other importers of merchandise imported from other countries, if any, would not be pertinent. *Marine Products Co.* v. *United States*, 22 Cust. Ct. 371, Reap. Dec. 7647, modified (on other grounds) *sub nom United States* v. *Marine Products Co.*, 24 Cust. Ct. 615, Reap. Dec. 7830, affirmed *sub nom Marine Products Co.* v. *United States*, 39 C. C. P. A. (Customs) 52, C. A. D. 462. It also appears that all sales were at 55 cents per pound, regardless of quantity. Therefore, no question of usual wholesale quantity can arise. *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093; *United States* v. *Wm. A. Foster & Co., Inc. (Standard Rolling Mills, Inc.)*, 34 C. C. P. A. (Customs) 9, C. A. D. 336.

In the decision rendered January 14, 1954, *supra*, deductions were allowed for certain items, including the cost of transportation from Laredo to the purchasers' respective places of business. Rehearing was granted for the reason that, upon further consideration, the court was of opinion that the item deductible for transportation charges should have been the cost of transportation from Laredo to the terminal in New York, the principal market for the merchandise. *E. H. Corrigan* v. *United States*, 32 Cust. Ct. 599, Reap. Dec. 8295. That figure has now been supplied.

Counsel for the Government contends, however, that no deduction for transportation from Laredo to New York is permitted on the ground that the merchandise was released to the importer of record at Laredo.

Section 402 (e) of the Tariff Act of 1930, as amended, defines United States value as the price of such or similar merchandise in the principal market of the United States, with certain allowances, including cost of transportation from the place of shipment to the place of delivery. The place of delivery means the pier or railroad station in the principal market. *Star Import Company* v. *United States*, Circ. Reap. 2370. Therefore, in the instant case, the cost of transportation from Laredo to New York is deductible. *Universal Carloading & Distributing Co., Inc.* v. *United States*, 4 Cust. Ct. 591, Reap. Dec. 4712, affirmed in 4 Cust. Ct. 827, Reap. Dec. 4894.

Under defendant's theory of the case, the cost of transportation would be deductible if the merchandise had been transported in bond from Laredo to New York, but not where the merchandise was released to the importer at Laredo and subsequently sent to the principal market of New York. Such is not the intent of the statute, since it would result in a nonuniformity of duties.

On the basis of the advisory classification of the merchandise herein,

information in the official papers, and the cost of transportation from Laredo to New York, United States value is calculated as follows:

Reappraisement No. 160603–A

| | | |
|---|---|---|
| Selling price | $0. 55 | per pound |
| Less 8 per centum for profit | . 0440 | |
| | $0. 5060 | |
| Less 8 per centum for general expenses | . 0440 | |
| | $0. 4620 | |
| Less transportation and customs entry ($685.71 divided by 16,500 pounds) | . 0416 | |
| Value, including duty | $0. 4204 | |
| Value, less duty at 35 per centum ad valorem ($0.4204 divided by 1.35) | $0. 3114 | |

Reappraisement No. 160604–A

| | | |
|---|---|---|
| Selling price | $0. 55 | per pound |
| Less 8 per centum for profit | . 0440 | |
| | $0. 5060 | |
| Less 8 per centum for general expenses | . 0440 | |
| | $0. 4620 | |
| Less transportation and customs entry ($284.86 divided by 7,062 pounds) | . 0403 | |
| Value, including duty | $0. 4217 | |
| Value, less duty at 35 per centum ad valorem ($0.4217 divided by 1.35) | $0. 3123 | |

On the basis of these calculations, I hold that the United States value of the first shipment herein is $0.3114 per pound and that of the second shipment $0.3123 per pound.

On the record herein, I find as facts:

1. That the merchandise consists of garlic powder exported from Mexico on December 2, 1943, and January 6, 1944.

2. That on said dates of exportation no such or similar merchandise was being freely offered for sale for home consumption in Mexico, or for exportation to the United States, in accordance with the provisions of section 402 (c) or (d) of the Tariff Act of 1930, as amended.

3. That the merchandise involved herein was freely offered for sale to all purchasers in the principal market of the United States at 55 cents per pound, packed, at or before the respective dates of exportation thereof, for future delivery; that the first shipment was sold to different purchasers on September 24, 1943, and October 5 and 19, 1943, at that price; and that the second shipment was sold to different

purchasers on December 3, 1943, January 27, 1944, February 5, 1944, and April 20, 1944, at that price.

4. That the profits on these shipments and the general expenses each amounted to more than 8 per centum of the selling price; that the expenses for transportation and customs entry for the first shipment amounted to $0.0416 per pound; that such expenses for the second shipment amounted to $0.0403 per pound; that the merchandise was advisorily classified under paragraph 775 of the Tariff Act of 1930 at the rate of 35 per centum ad valorem.

5. That deducting the amounts of the items mentioned in the above paragraph from the selling price in the United States results in a value of $0.3114 per pound for the first shipment and $0.3123 per pound for the second shipment.

I conclude as matter of law:

1. That there is no foreign value or export value, as defined in section 402 (c) and (d) of the Tariff Act of 1930, as amended, for the merchandise involved herein.

2. That the United States value, as that value is defined in section 420 (e) of the Tariff Act of 1930, as amended, is the proper basis for the determination of the value of the merchandise involved herein.

3. That such value is the selling price in the United States of 55 cents per pound, less statutory allowances for profit, general expenses, cost of transportation from the place of shipment to the place of delivery in the principal market of the United States, the cost of customs entry, and duty.

4. That other claimed items of expense are not properly deductible under the terms of the statute.

5. That the United States value of the first shipment, made on December 2, 1943, is $0.3114 per pound, and that of the second shipment, made on January 6, 1944, is $0.3123 per pound.

Judgment will be rendered accordingly.