(A. R. D. 67)

UNITED STATES v. E. H. CORRIGAN

Entry Nos. 3009; 3770.

## First Division, Appellate Term

(Decided March 26, 1956)

*Warren E. Burger*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellant.
*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the appellee.

Mollison, Judge: This is an application for review of the decision of a single judge sitting in reappraisement, reported in *E. H. Corrigan v. United States*, 33 Cust. Ct. 540, Reap. Dec. 8355. The matter has been before this court and our appellate court on a prior occasion, but the past history of the case will not be repeated in detail here, except insofar as may be necessary. The decision below contains an adequate summary of the situation, including all pertinent citations.

As the case is presented to us, there is no question but that there is no foreign or export value for the merchandise involved, garlic powder imported from Mexico, within the meaning of those terms, as defined in the applicable statute, section 402 of the Tariff Act of 1930. The issue presented to the court below and here is whether or not the record contains such evidence as will support a finding of United States value under subsection (e) of said statute, as amended. On the record, the court below found in the affirmative on that question and held the correct values to be $0.3114 per pound for the first shipment, covered by reappraisement No. 160603–A, and $0.3123 per pound for the second shipment, covered by reappraisement No. 160604–A.

Defendant below made seasonable application for review of that decision, and its position here is essentially the same as its position before the trial court.

It appears from the record that, prior to the two importations here involved, there had been imported some three or four so-called "trial" shipments of such garlic powder from the same manufacturer, most of which had been sold by the importer, but part of which it appears had been distributed free as samples. In fact, it appeared that the sales of the merchandise under appraisement were made for future delivery based upon the said samples. When the case was originally before the trial court, plaintiff urged that these prior shipments constituted prototype merchandise within the requirement of the interpretation of United States value laid down in numerous cases, among which may be cited *United States* v. *G. W. Sheldon & Co.*, 23 C. C. P. A. (Customs) 245, T. D. 48108; *United States* v. *Collin & Gissel (Ludwig Baer)*, 29 id. 96, C. A. D. 176; *United States* v. *New York Merchandise Co., Inc.*, 31 id. 213, C. A. D. 274; and *United States* v. *Robert Reiner, Inc.*, 35 id. 50, C. A. D. 370.

That contention of the plaintiff was overruled both by the original trial judge and this division of the court, and such action was seemingly approved by the Court of Customs and Patent Appeals when the matter came before it.

As an alternative contention, and that which is pressed here, plaintiff urged that the domestic sales of the instant shipments formed the

basis for United States value under the doctrine of the case of *White Lamb Finlay, Inc.* v. *United States,* 29 C. C. P. A. (Customs) 199, C. A. D. 192. That case held that free offers of merchandise for future delivery may establish a market price if the delivery can be prompt. The doctrine of that case, however, had been developed in connection with instances relating to foreign and export value, and had never been applied to United States value.

The original trial judge and this division held that, under the principles of the *Sheldon* and other cases hereinbefore cited, the domestic sales of the merchandise under appraisement could not be used as a basis for determining United States value.

When the case came before our appellate court, however, it held that—

* * * offers of sale and sales for future delivery properly may be taken into consideration in determining United States value as defined in section 402 (e), *supra,* in cases where the facts and circumstances show that such procedure is followed in the ordinary course of trade, and the other requisite statutory elements are present.

Inasmuch as neither the original trial judge nor this division had considered or evaluated the evidence upon that basis, the case was remanded to this court for restudy of the evidence and action in accordance therewith.

On the remand, the trial judge found from the evidence that, at or about the time of exportation of the instant merchandise, such merchandise was freely offered for sale for domestic consumption to all purchasers in the principal market of the United States for future delivery at a uniform price of 55 cents per pound, packed, and that such offers and sales were made at time near enough to the respective dates of exportation and under such circumstances as to reflect the price of the goods on those dates. The court further found that, inasmuch as the importer took the entire output of the Mexican manufacturer and offered it for sale in the United States by sample for future delivery, that method of doing business constituted the ordinary course of trade for the sale or offer for sale of such merchandise in the United States, and, further, that, inasmuch as it was clear that the price at which the merchandise was offered did not vary by reason of the quantity offered, the question of usual wholesale quantities was not involved in the issue.

All together, the foregoing spells out a finding under the statutory formula that what might be called a "basic United States value" for the merchandise involved in each of the shipments did exist, that is to say, that there was a—

* * * price at which such or similar imported merchandise [was] freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation

of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade * * *.

The statute prescribes certain allowances which, if found to be applicable, are to be deducted from the price at which the merchandise is offered for sale, i. e., the basic United States value, and the trial judge made findings in that regard which are assigned as error in this appeal. Before considering the question of deductions, however, appellant herein urges that the record does not support the findings with respect to basic United States value made by the trial judge, as above set out.

In particular, it is argued that the evidence does not show that the method of doing business by the importer, by exhibiting a sample of such merchandise which had previously been imported, "was in the ordinary course of trade of selling imported or domestic garlic powder in the United States." (Appellant's brief, p. 8.)

We may say at the outset that we fail to see how the course of trade of selling *domestic* garlic powder in the United States could have any bearing on the issue, since United States value is concerned with the offer and sale in the United States of *imported* merchandise.

As to imported garlic powder, defendant cites the case of *United States* v. *International Forwarding Co., Inc., et al.*, 27 C. C. P. A. (Customs) 21, C. A. D. 56. At page 24 of the opinion in that case, our appellate court said:

The fact that the German manufacturer of the involved merchandise sold in Germany such or similar merchandise only to consumers, at prices that were not uniform, and that it placed restrictions upon such sales, is no evidence whatever that such or similar merchandise was not sold in Germany by other manufacturers in the usual wholesale quantities at uniform prices, in the ordinary course of trade, without any restrictions.

In order to show the distinction between that case and this, some explanation is necessary. The merchandise in the *International* case had been appraised on the basis of foreign value. In order to negative that appraisement, the plaintiff-importer offered evidence tending to establish that the foreign manufacturer of the particular merchandise in question engaged in restrictive practices in the offer of its merchandise for sale for home consumption, but made no attempt to establish that other manufacturers of *such or similar* merchandise in the foreign market followed the same restrictive practices. That evidence was held not to be sufficient to establish a lack of foreign value in the face of the presumption of correctness of the value returned by the appraiser. In other words, while the plaintiff-importer had established a lack of foreign value for *such merchandise made by the particular manufacturer*, it had failed to establish a lack of foreign value for *such merchandise made by other manufacturers*, or for similar merchandise.

It is a familiar rule of reappraisement law that, where value is fixed by the price of "such or similar" goods, the first inquiry must be as to whether there exists a value for "such" merchandise, and, failing that, a value for "similar" merchandise. *United States* v. *Meadows Wye & Co., Inc.* (*F. A. MacCluer, Inc.*), 15 Ct. Cust. Appls. 451, T. D. 42643. And it is a corollary to that rule that if a value be found for "such" merchandise the value of "similar" merchandise is immaterial.

No situation similar to or warranting the application of the principles of the *International* case, *supra*, is involved here. It clearly appears that there were not other importers of *such* merchandise, inasmuch as the importer herein took the entire output of the manufacturer, who was the sole manufacturer of garlic powder in the foreign market. There could, therefore, be no question of offering evidence as to the practices of other importers of Mexican garlic powder, since there were none. The importer herein has been engaged in *affirmatively* establishing a United States value for *such* merchandise, as distinguished from the efforts of the importer in the *International* case, who was attempting to *negative* a foreign value for such or similar merchandise. Consequently, the only elements of value necessary to be proved here were those relating to "such" merchandise. Evidence as to the practices of other importers of garlic powder from countries other than Mexico, which garlic powder would not be "such" merchandise but, at best, "similar" merchandise, would be immaterial.

What was the "ordinary course of trade" in connection with the offer for sale in the United States of such merchandise? Since the importer herein was the only importer and domestic offeror of "such" merchandise, it might be considered that the practice followed by it, i. e., by exhibiting a sample and taking orders for future delivery, would represent the ordinary course of trade. This apparently was the view of the trial judge, who cited *Marine Products Co.* v. *United States*, 22 Cust. Ct. 371, Reap. Dec. 7647 (later reversed on other grounds), as authority for the proposition that sales by other importers of merchandise imported from other countries, if any, would not be pertinent.

We think that the term "ordinary course of trade" has reference to the normal and usual practices which obtain in the offer for sale of merchandise such as that under appraisement (or similar merchandise, if pertinent) in the particular trade involved. The evidence shows that the merchandise at bar, Mexican garlic powder, was a new commodity in the American market and it would appear that its sales potentialities and reception by the public were unknown. These and other factors, such as the fact that production of garlic powder by the Mexican factory was a new and untried venture, and that

there were shipment difficulties because the importations were made during wartime, would make the offer of merchandise by sample and the taking of orders for reasonably prompt future delivery a normal and usual business practice. The record shows that the deliveries made under the sales so effected were reasonably prompt, in the light of the foregoing circumstances. We are, therefore, of the opinion that, as held by the court below, the offers established by the record were made in the ordinary course of trade.

We are likewise in accord with the view of the trial judge that, inasmuch as it was clearly established that the price at which the merchandise was offered for sale did not vary with the quantity purchased, the usual wholesale quantities were not an issue in the case. We see no merit in the contention of the appellant that the plaintiff below was required, nevertheless, to make a proper showing of usual wholesale quantities. Quite obviously, if the price at which the merchandise was offered did not vary with the quantity purchased, such price would apply to the usual wholesale quantities, whatever they might be, and it would be needless and immaterial in result to inquire further into that element of value. The cases cited by the trial court, *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093, and *United States* v. *Wm. A. Foster & Co., Inc. (Standard Rolling Mills, Inc.)*, 34 C. C. P. A. (Customs) 9, C. A. D. 336, are dispositive of the matter.

There is ample evidence in the record to support each of the other findings of the trial judge, not specifically assigned as error, with respect to the other elements of basic United States value, and we so hold. This brings us to the remaining questions raised by the appellant in this appeal which have to do with the deductions allowed by statute from the said basic United States value.

These statutory deductions are:

(1) Duty,

(2) Cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery.

(3) A commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum, and

(4) A reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

No question seems to be raised with respect to the allowances made by the trial court with respect to items (1) and (3).

As to item (2), appellant contends that the freight charges in the United States from Laredo, Tex., where the merchandise was entered and released from customs custody, to New York City, the principal market, which charges were allowed by the trial court as proper deduc-

tions from the basic United States value, are not properly deductible in ascertaining statutory United States value.

The trial court, citing *Star Import Company* v. *United States*, Circ. Reap. 2370—which, in turn, cited *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318; *Same* v. *Same*, 13 id. 626, T. D. 41480; and *Carey & Skinner* v. *United States*, 13 id. 7, T. D. 40808—and *Universal Carloading & Distributing Co., Inc.* v. *United States*, 4 Cust. Ct. 591, Reap. Dec. 4712, held that the "place of delivery" referred to in the statute means the place of delivery *in the principal market*, which, in the case of shipments by rail would be the railroad station and in the case of shipments by water would be the pier.

We are of the opinion that the reasoning and ruling of the trial judge were correct. It is clear that the intendment of the United States value statute is to find a value for merchandise in the principal market of the United States, less the duties, costs, expenses, and charges incurred in bringing it to that United States principal market from the foreign market. The word "delivery" occurs twice in the statute—once in fixing the condition and location of the merchandise to be adopted as a standard of valuation, i. e., "packed ready for delivery, in the principal market of the United States"—and again in listing the deductions from basic United States value, i. e., "with allowance made for * * * cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery." There is nothing in the context of the statute which indicates that the place of delivery was to be a different place in each case. On the contrary, there is every reason to believe that the place of delivery was to be the same in each case, that is to say, "in the principal market."

As pointed out by the trial court, the theory contended for by the appellant would make the value depend upon the place where the merchandise was released from customs custody, so that the importer herein, by electing to have the merchandise transported in bond between Laredo and New York, could have to that extent controlled the value to be adopted for customs purposes. Such a construction would create multiple values for such merchandise at the same time, and be inharmonious with the obvious purpose of the statute, which is to fix a value for merchandise at a definite time and in a definite place. Moreover, it could lead to absurd and ridiculous results, as would be the case where merchandise imported through a port of entry which was also a principal market was, nevertheless, transported in bond to the other end of the country and released from customs custody and delivered to the importer there.

None of the cases cited by counsel for the appellant in the brief filed in its behalf supports the contention made on this point. In many of the cases, the port of entry, where the merchandise was

released from customs custody and delivered to the importer, was also the principal market, and consequently the precise question here, where the port of entry and release from customs custody was a different place from the principal market, did not arise in those cases. None of the cases cited is contrary to the holding of the trial court herein, with which we are in accord.

The final point remaining for consideration is the allowance made for general expenses. The statute provides for the deduction from basic United States value of—

\* \* \* a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

The evidence on the point consists of the oral testimony of the vice president of the ultimate consignee and the person responsible for the sale of the garlic powder in question. He testified that the general expenses of his firm were about 15 per centum and that they were never less than 15 per centum. He further testified that expenses in connection with the garlic powder in question were greater than the usual general expenses of his firm.

Upon the foregoing evidence, the trial court allowed the statutory maximum of 8 per centum. Appellant contends the foregoing evidence is insufficient to support the trial court's finding, citing *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, T. D. 46378, and *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495.

The *Maier* case, *supra*, involved, among other things, a question as to the sufficiency of evidence offered in connection with a matter involving the cost of production statute then existing, section 402 (e) of the Tariff Act of 1922. That statute called for—

The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise.

Evidence was offered in the *Maier* case to the effect that the general expenses of the manufacturing company for a certain year were 22.72 per centum of that year's turnover. It was pointed out by the court that such figure represented a percentage of the turnover of *all* the goods sold by the manufacturer, and not necessarily the usual general expenses incurred in the production of "such or similar merchandise."

While the statute here involved is drafted in different language, it seems quite likely that what is called for is not the general expenses incurred in connection with the importer's entire business, but only the general expenses relative to the particular merchandise under appraisement. We are of the opinion that when the plaintiff below established—

(1) a minimum percentage below which the general expenses of its business did not fall, and

(2) that the general expenses in *connection with the particular merchandise under appraisement* were in excess of that percentage, and it further appears that the minimum percentage exceeded the statutory maximum percentage, the evidentiary requirements in connection with the item for—

* * * a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods—

were met.

It must be borne in mind that the statute does not call for the *actual* general expenses, or even the *usual* general expenses, but calls for—

* * * *a reasonable allowance* for general expenses * * *. [Italics added.]

The testimony with respect to general expenses was given by the vice president of the firm, who was personally responsible for the handling of the particular item in question, and consequently in a position to have knowledge of the matter. The witness was personally present in court and subject to the sanctions of oath and cross-examination.

We are of the opinion that, in the light of the foregoing and of the particular statutory requirement involved, the testimony offered was of evidentiary facts and not of conclusions, and not contrary to the holding of the *Brooks Paper Company* case, *supra*, with respect to evidentiary and ultimate facts.

On the record herein, we find as facts:

1. That the merchandise consists of garlic powder exported from Mexico on December 2, 1943, and January 6, 1944.

2. That on said dates of exportation no such or similar merchandise was being freely offered for sale for home consumption in Mexico, or for exportation to the United States, in accordance with the provisions of section 402 (c) or (d) of the Tariff Act of 1930, as amended.

3. That the merchandise involved herein was freely offered for sale for domestic consumption to all purchasers in the principal market of the United States in the usual wholesale quantities and in the ordinary course of trade at 55 cents per pound, packed, at or before the respective dates of exportation thereof, for reasonably prompt future delivery; that the first shipment was sold to different purchasers on September 24, 1943, and October 5 and 19, 1943, at that price; and that the second shipment was sold to different purchasers on December 3, 1943, January 27, 1944, February 5, 1944, and April 20, 1944, at that price.

4. That the profits on these shipments and the general expenses each amounted to more than 8 per centum of the selling price; that

the expenses for transportation and customs entry for the first shipment amounted to $0.0416 per pound; that such expenses for the second shipment amounted to $0.0403 per pound; that the merchandise was advisorily classified under paragraph 775 of the Tariff Act of 1930 at the rate of 35 per centum ad valorem.

5. That deducting the amounts of the items mentioned in the above paragraph from the selling price in the United States results in a value of $0.3114 per pound for the first shipment and $0.3123 per pound for the second shipment.

We conclude as matters of law:

1. That there is no foreign value or export value, as defined in section 402 (c) and (d) of the Tariff Act of 1930, as amended, for the merchandise involved herein.

2. That the United States value, as that value is defined in section 402 (e) of the Tariff Act of 1930, as amended, is the proper basis for the determination of the value of the merchandise involved herein.

3. That such value is the selling price in the United States of 55 cents per pound, less statutory allowances for profit, general expenses, cost of transportation from the place of shipment to the place of delivery in the principal market of the United States, and the cost of customs entry and duty.

4. That the United States value of the first shipment, made on December 2, 1943, is $0.3114 per pound, and that of the second shipment, made on January 6, 1944, is $0.3123 per pound.

Judgment will accordingly issue affirming the decision of the trial court.