SAMUEL SHAPIRO & COMPANY, INC., A/C THE SHARPE & HART ASSOCIATES, INC. v. UNITED STATES (No. 5148)*

---

*C.A.D. 842

United States Court of Customs and Patent Appeals, June 11, 1964

*Allerton deC. Tompkins,* for appellant.

*John W. Douglas,* Assistant Attorney General, *Andrew P. Vance,* Chief, Customs Section, *Herbert L. Warren,* for the United States.

[Oral argument April 6, 1964, by Mr. Tompkins and Mr. Warren]

Before WORLEY, Chief Judge, and RICH MARTIN, SMITH and ALMOND, Jr., Associate Judges

WORLEY, Chief Judge, delivered the opinion of the court:

The importer, Samuel Shapiro & Company, Inc., appeals from the judgment of the United States Customs Court, First Division, Appellate Term (A.R.D. 155) reviewing the decision of the trial court in an appeal for reappraisement of certain imported rifle parts, designated M. 54 "actions" and constituting firing mechanisms for rifles.

Before the trial court the parties stipulated as follows:

At the time of exportation of said actions to the United States there was no "foreign value" and no "export value" as defined in section 402(c) and section 402(d) Tariff Act of 1930, as amended.

At the said time of exportation other actions similar to the said actions No. 54 were not offered for sale for domestic consumption in the United States.

At the said time of exportation said actions were freely offered for sale at $90.00 each in Mattoon, Illinois, by the Ted Holmes Gun Shop to all purchasers for domestic consumption, said actions having previously been purchased from Sharpe & Hart, Emmitsburg (where they had been originally delivered from Denmark) and shipped from Emmitsburg to Mattoon.

The appraised value of $67.057 each, net packed, was based upon a "United States value" for "purchased merchandise" as defined in section 402(e) Tariff Act of 1930, computed as follows:

| | |
|---|---:|
| Sales price per piece in Mattoon | $90.00 |
| Less 2% discount for cash | 1.80 |
| | $88.20 |
| No profit to seller in Mattoon | 0.00 |
| | $88.20 |
| Less General expenses to seller in Mattoon, which exceeded 8% | 7.056 |
| | $81.144 |
| Less Cost of Transportation and insurance from Denmark to Mattoon | 2.155 |
| | $78.989 |
| Less U.S. duty | 11.932 |
| | $67.057 |
| Appraised value per piece, not packed | $67.057 |

In computing said "United States Value" the appraiser made no deduction for the following items:

| | |
|---|---:|
| (a) Clearance charges at Baltimore, Md. at | $0.28 each |
| (b) General expenses of Sharpe & Hart, Inc. at Emmitsburg (overheads, selling expenses, etc.) at | $0.32 each |
| | $0.60 |

The "cost of production" as defined in section 402(f) Tariff Act of 1930, for said actions was $37.00 each, net packed.

Oral testimony of the president of The Sharpe and Hart Associates, Inc. of Emmitsburg, Md., an importer of firearms and parts therefor, was also introduced at the trial. The witness testified that, at the time the instant M. 54 action were imported, his firm was their sole importer and exclusive distributor in the United States, and sold all of them at wholesale to the Ted Holmes Gun Shop of Mattoon, Illinois.

The pertinent section of the Tariff Act of 1930, as amended, reads:

SEC. 402 VALUE

(a) Basis.—For the purposes of this Act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher;

(2) If the appraiser determines that neither the foreign value nor the export value can be satisfactorily ascertained, then the United States value;

(3) If the appraiser determines that neither the foreign value, the export value, nor the United States value can be satisfactorily ascertained, then the cost of production;

\*    \*    \*    \*    \*    \*    \*

(e) United States Value.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the

imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

The trial court ruled that the appraisement at $67.057 per piece as made by the appraiser was correct.

The Appellate Term found as facts:

1. That the merchandise involved herein consists of certain rifle parts, identified on the invoice as "100 actions cal. 222 Rem. M. 54," exported from Otterup, Denmark, on July 21, 1956, and entered at the port of Baltimore, Md., on August 6, 1956.

2. That the present merchandise was appraised on the basis of the United States value of such merchandise.

3. That, at the time of exportation of the merchandise in question, such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities, and in the ordinary course of trade, either for home consumption in Denmark or for exportation to the United States.

4. That merchandise, such as that involved herein, was freely offered for sale for domestic consumption, in the usual wholesale quantities and in the ordinary course of trade, in the principal market of Mattoon, Ill., at the time of exportation of the present merchandise.

5. That clearance charges, incurred at the port of entry in the process of bringing the merchandise to the principal market, was a necessary expense from the place of shipment to the place of delivery.

As a matter of law, it concluded:

1. That there is no foreign or export value for merchandise, such as or similar to the actions involved herein.

2. That the proper basis for appraisement of the present merchandise is United States value.

3. That the United States value for the actions in question is the appraised value, less clearance charges of 28 cents each, or $66.777 each.

Thus the Appellate Term modified the appraisement made by the appraiser and approved by the trial court only by additionally allowing the clearance charges of $0.28 each to be deducted from the selling price. The Government filed no cross appeal and does not challenge the ruling as to those particular charges.

The primary issue here is whether the Customs Court erred in finding, as a matter of law, that Mattoon, Illinois, was the "principal market" under section 402(e).[1]

---

[1] Although item 4 of the Appellate Term's findings of "fact" refers to "the principal market of Mattoon, Ill.," the location of the "principal market" under section 402(e) is in reality a matter of law. Hence, that matter is reviewable by this court under section 501 of the Tariff Act of 1930, which confines our review in reappraisement cases to questions of law.

It is the importer's position that the principal market for the goods is Emmitsburg, Maryland. As the Government concedes, if that is so, there is no United States value for the imported merchandise because the market in Emmitsburg was restricted by an exclusive dealership and the merchandise was, therefore, not "freely offered to all purchasers." Under those conditions, the proper appraisement would have been $37.00 representing the stipulated cost of production.

The importers contend that in considering whether an importation is to be appraised at United States value under section 402(e).

The first thing to do is to locate the principal market, then if there is a price in that market at which the merchandise is "freely offered for sale" to all purchasers that price should be used. If the merchandise is not freely offered for sale in the principal market, then we contend there can be no "United States Value," because that value can not legally be based upon prices in another city that is not the principal market.

The importer states that previous litigation has "been concerned with the primary markets where the manufacturers made the initial sales, not to resale prices in secondary markets where the resellers made resales." It applies the term "reseller's market" to the latter markets.

The Appellate Term noted that the statutory term involved here is "principal market." It further stated:

Appellant's [importer's] contention that the "location of the principal market in the United States is not predicated upon free offers for sale" is untenable. United States value, as defined in section 402(e), as amended, embodies several requirements, each of which has equal importance as a factor in determining such statutory value. In other words, the price that truly represents United States value is the price that includes all of the essential elements of the statutory definition. * * *

We agree with that analysis. In addition, ▮▮▮ we find no basis for concluding that the "principal market" must be what the importer designates as a "primary" market and cannot be what it designates a "resellers' market."

The Customs Court regarded as controlling the decision of this court in *Innis, Speiden & Co. et al.* v. *United States*, 19 CCPA 1, T.D. 44789. That decision involved appraisement of an imported commodity under the statutory language of section 402(f) of the Tariff Act of 1922, which defined American selling price as the price at which the goods are freely offered for sale "in the principal market of the United States," in the ordinary course of trade, and in the usual wholesale quantities. The court there held that the principal market was determined by where the commodity was freely offered for sale rather than by where a greater number of sales were made under restrictions which prevented them from conforming to the statutory requirements. In reaching that conclusion, the court stated:

The principal market is certainly not shown by proof of sales not made in accordance with the provision of the statute. * * *

We think that statement is also applicable to the term "principal market" in section 402(e) of the 1930 Act. There being no restriction in that section that the "principal market" must be a "primary" market or cannot be a "resellers'" market, we think it clear that Mattoon, Illinois, was correctly found to be the principal market under section 402(e) in the present case.

The decision of the Customs Court in *United States* v. *Mutual Supply Co., et al.*, 11 Cust. Ct. 461, Reap. Dec. 5950 does not convince us of error here. The factual situation there obviously distinguishes from the present case and the importer, in citing the case, concedes it is not directly in point.

The only other issue lies in the importer's alternative claim that there was error in disallowing the charge for "'General expenses of Sharpe & Hart, Inc. at Emmitsburg (overheads, selling expense, etc.)'" in the amount of 32 cents each in determining United States value under section 402(e) on the basis of Mattoon, Illinois, as the principal market. In ruling on that point, the Appellate Term agreed with the following statement of the trial court:

* * * no distinction is made under the statute between general expenses incurred by the importer and those incurred by the purchaser of the imported merchandise. In either case, all that the appraiser may deduct from the selling price is 8 per centum of the general expenses. That is precisely what the appraiser did in the appraisement of the involved merchandise, and I find no error in the appraisement on this account.

We agree that, the maximum of 8 per centum set out in the statute having already been allowed for general expenses, the $0.32 expense in question cannot additionally be allowed under general expenses.

Before us, however, the importer states:

* * * We do not make this claim under the deduction related to "general expenses"; we make it under the deduction related to the separate and distinct allowance for the "necessary expenses from the place of shipment to the place of delivery". We claim that the overheads, selling expenses, etc. incurred by Sharpe & Hart, Inc. in getting the actions through the principal market to the reseller's market form a part of the above delivery expenses deduction (not the general expense deduction).

Section 402(e) couples "duty, cost of transportation and other necessary expenses from the place of shipment to the place of delivery." We do not find that items of "overheads, selling expenses, etc." would ordinarily fall within, or be directly analogous to, the costs listed in that term rather than be considered a general expense. Moreover, we do not see that the mere fact that the expenses were incurred at Emmitsburg rather than at the principal market in Mattoon changes what would normally be general expenses into "necessary expenses from the place of shipment to the place of delivery."

Although the decisions cited by the importer [2] have been considered, we do not find any of them to involve circumstances sufficiently analogous to the present case to be controlling.

The judgment is *affirmed*.

---

[2] *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T.D. 41318 (13 Ct. Cust. Appls. 626, T.D. 41480) ; *Universal Carloading & Distributing Co., Inc.* v. *United States*, 4 Cust. Ct. 591, R.D. 4712 (Affirmed—Appellate Term, Third Division, R.D. 4894) : *E. H. Corrigan* v. *United States*, 32 Cust. Ct. 561, 564, R.D. 8278 ; *E. H. Corrigan* v. *United States*, 33 Cust. Ct. 540, R.D. 8355, affirmed in *United States* v. *E. H. Corrigan*, 36 Cust. Ct. 639, 646, A.R.D. 67.
* C.A.D. 843