UNITED STATES *v.* BEER & Co. (No. 2881)[1]

United States Court of Customs Appeals, May 19, 1927

*Charles D. Lawrence*, Assistant Attorney General (*Oscar Igstaedter*, special attorney, of counsel), for the United States.
*John R. Rafter* for appellee.

[1] T. D. 42215.

[Oral argument April 19, 1927, by Mr. Igstaedter and Mr. Rafter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

This case involves a matter of reappraisement. Certain cotton laces were imported and appraised by the appraiser, at the port of New York. The importer appealed to reappraisement. On reappraisement it was stipulated by counsel that the merchandise had no foreign or export value as defined in section 402 (b) and (c) of the Tariff Act of 1922 and that the same should be appraised at the United States value thereof, as defined in section 402 (d) of said act. The general appraiser sustained the appraised value and the importer applied for a review by the board, assigning two principal errors, namely, that the general appraiser had erred in not holding the importer should be allowed the expenses of delivering his goods to the purchasers thereof, under said section 402 (d), and that he had erred in sustaining an allowance for general expenses and profits as provided by said section, computed under the method prescribed in T. D. 39297, hereinafter referred to.

The board, on review, affirmed the judgment of the general appraiser on the first error alleged and reversed it as to the second, holding that the method of computing profits and general expenses prescribed by T. D. 39297 is not in compliance with the statute. The Government appeals, alleging error in the said second finding of the board. There is therefore but one question presented, namely, whether the method prescribed in T. D. 39297 is the proper method of computing general expenses and profits under said section 402 (d).

Section 402 (d) is as follows:

(d) The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum, and a reasonable allowance for general expenses not to exceed 8 per centum on purchased goods.

The Treasury Department, after the approval of the Tariff Act of 1922, issued the following instructions as to its interpretation, T. D. 39297, 42 Treas. Dec. 176:

TREASURY DEPARTMENT, *October 31, 1922.*

*To Appraising Officers:*

Attention is invited to the definition in Title IV, section 402, subdivision (d), tariff act of 1922, of the term "the United States value of imported merchandise."

Certain questions having arisen in connection with the application of this definition to imports classifiable under paragraphs 27 and 28 of Title I of the

act, the department offers the following concrete example as best illustrating its views on the procedure and computations necessary in arriving at the United States value of such merchandise:

Assume that certain dyes classifiable under paragraph 28 were exported from Germany on September 15, 1922, and imported at New York on October 1, 1922; and that the "such or similar imported merchandise" which subdivision (d), section 402, Title IV, contemplates shall be taken as the standard of comparison was selling at New York on September 15, 1922, in the usual wholesale quantities, etc., at $1.45 per pound. This price includes the various items for which subdivision (d) provides that allowance shall be made. Assume a maximum allowance of 8 per cent for profit; dividing $1.45 by 1.08 gives $1.34 and subtracting this from $1.45 leaves 11 cents as the amount of the profit included in the $1.45. Assume a maximum allowance of 8 per cent for general expenses; dividing $1.34 by 1.08 gives $1.24 and subtracting this from $1.34 leaves 10 cents as the amount of the general expenses, included in the $1.45. Assume that the cost of transportation, insurance, and other necessary expenses from the place of shipment in Germany to New York was 3 cents and deducting this from $1.24 leaves $1.21, which includes the dutiable value and the duty. Assume that such merchandise was an article which on September 15 was dutiable under section 500 of the act of September 8, 1916, at 30 per cent ad valorem. Dividing $1.21 by 1.30 gives $0.93 as the value upon which duty was assessed, and which is the United States value of the merchandise imported on October 1 and subject to the 60 per cent ad valorem rate provided for in the proviso of paragraph 28. When the article is subject to both a specific and ad valorem rate the specific duty will be deducted before making the division.

The amount to be deducted as duty in each case will be governed by the amount of duty actually paid on the article used as the basis for computation.

The foregoing applies to purchased goods. In the case of consigned goods the appraiser will ascertain the amount of commission paid or contracted to be paid and allow not to exceed 6 per cent of the gross selling price, in lieu of the 8 per cent profit and 8 per cent general expense. The transportation costs and duty will be ascertained in the same manner as on purchased goods.

Appraising officers will ascertain in the usual way through the special agency service or otherwise, as provided by law and regulations, the facts necessary to be used in such computations.

EDWARD CLIFFORD, *Assistant Secretary.*

It is contended by the Government that the method thus indicated is the correct method of ascertaining the United States value as fixed by said section 402 (d). We find ourselves unable to concur in this view. It may be, and doubtless is, a correct method of ascertaining the original cost of the article sold on the American market which is used for purposes of comparison. But this is not what the statute provides for.

An analysis of section 402 (d) discloses that the United States value is the *price at which such* or similar *imported merchandise is sold* in the market. From this *price* are to be deducted the following allowances:

First. Duty.

Second. Cost of transportation and insurance.

Third. Other necessary expenses.

Fourth. Profits not to exceed 8 per centum.

Fifth. General expenses not to exceed 8 per centum.

The statute therefore directs that 8 per centum be severally deducted for profits and expenses. Eight per centum of what? Manifestly, 8 per centum of the *price at which the merchandise is sold*, mentioned in the section, for to no other subject could this language be assigned. If it were to apply to the original cost of the article, it would be reasonable to presume that the language of the statute would have so indicated.

On the other hand, the inaccuracies of the method suggested by T. D. 39297 are apparent. While section 402 (d) provides equally for 8 per centum for profits and 8 per centum for general expenses, without discrimination, the method provided by T. D. 39297 makes them unequal in their final allowance, one percentage being computed on one amount and the other on an entirely different amount. In addition, it will be observed that this Treasury regulation provides for the computation of 6 per centum for commissions upon the gross selling price, and another rule for computing profits and general expenses, while the language of section 402 (d) as to each is identical.

While the method proposed by the Treasury regulation in question may be the more accurate method of ascertaining the original selling price of an article, we are of opinion the Congress was attempting to establish, in section 402 (d), a simplified method of fixing a dutiable value and that the section should be interpreted according to the ordinary meaning of the language therein used.

Reference is made by the Government to the method of computing profits where cost of production was to be ascertained under paragraph L of Section III of the tariff act of October 3, 1913, as analyzed by the opinion in *Austin Baldwin & Co. v. United States*, 7 Ct. Cust. Appls. 186. On examination, however, it will be found that the case cited is not in point here and follows closely the method prescribed by the statute, one entirely different from the method provided for in said section 402 (d).

The judgment of the court below is *affirmed*.