(Reap. Dec. 10347)

CLAYTON CHEMICAL & PACKAGING COMPANY *v.* UNITED STATES

Entry No. 635, etc.

(Decided October 5, 1962)

*Smith Thompson* and *Michael Stramiello, Jr.*, for the plaintiff.

*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Samuel D. Spector* and *Harold L. Grossman*, trial attorneys), for the defendant.

OLIVER, Chief Judge: These are three appeals for reappraisement of the values returned by the appraiser on a photographic developing agent known by the trade name of Phenidone. The appeals, which were consolidated for trial and disposition, represent eight shipments of the merchandise from England during the period between July 1, 1953, and February 10, 1954. Upon importation, it was appraised on the basis of United States value, as defined in section 402(e) of the Tariff Act of 1930, as in existence at that time. The said definition is quoted in the margin.[1]

Plaintiff and defendant are in agreement that the correct basis of value for the merchandise is United States value, as so defined, the dispute being as to the correct amount or amounts representing the said value. Defendant primarily contends that the appraised values, ranging from $15.87 to $24.11 per pound, are the correct values of the merchandise. Alternatively, the defendant contends that the correct United States value for each shipment was $16.77 per pound.

Plaintiff primarily contends that the correct United States value for each shipment is $6.929 per pound and, alternatively, that the said value is $16.77 per pound.

Thus, while it appears that, under contentions alternative to their primary contentions, both parties are in agreement as to the correct United States value of the merchandise, $16.77 per pound, they are far apart with respect to their primary contentions.

There are two basic differences between the parties, the first being with respect to the United States selling price called for by the United States value definition, that is to say, the price at which such or similar

---

[1] [SEC. 402(e), as amended.] UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

imported merchandise was sold in the principal market of the United States *without* deduction for the statutory allowances. The second difference is with respect to the amounts which should be deducted from the said price for profit and general expenses in accordance with the statute.

The record establishes that Phenidone is an ingredient used in photographic developers and that, in such use, it is not used alone; that it had not appeared on the United States market prior to January 1953, when the plaintiff company, a formulator and manufacturer of photographic chemicals for sale to the photographic trade, began importing it. The plaintiff company used the imported Phenidone in the manufacture of several of its products and also offered it for sale to "anybody wishing to buy."

It appears that, in June 1953, the plaintiff company, by arrangement with the English manufacturer and exporter, became the exclusive American importer of Phenidone. Because at that time the product was new to this market, it was necessary for the plaintiff company to do certain promotional work, including securing publicity, contacting those who might be consumers of the product, and disseminating information concerning its nature and availability.

The record shows that the effort of the plaintiff company was along the line of contacting manufacturers of photographic solutions for sale to others and large users of photographic developers—in other words, those who would purchase what might be considered to be wholesale, as distinguished from retail, quantities. However, in order to initially attract the orders of such persons or firms, the plaintiff company offered Phenidone for sale in quantities as small as 1 ounce.

It is the plaintiff's contention that the sales in that quantity, and others in similar small quantities, were sample quantities; that they were made for experimental and testing purposes and were not sales for regular or ordinary commercial use or resale. Consequently, plaintiff contends such sales cannot be considered as sales "in the ordinary course of trade."

The "ordinary course of trade" in the purchase and sale of a product such as Phenidone, it is claimed, was for use in the production of photographic developers for resale as a commercial proposition or for consumption on a large scale, and the sales of sample quantities for experimental and testing purposes should be disregarded on the ground that they were not made in the ordinary course of trade.

Proof as to the nature of such sales was offered by the plaintiff as follows: The general manager of the plaintiff company testified that, in connection with the initial promotion of the product, a circular letter was sent to persons or firms who had inquired of the plaintiff company concerning Phenidone. A copy of the letter was received

in evidence as plaintiff's exhibit 1 and corroborates the testimony of the witness in that it urged inquirers to "send your order for a sample quantity of Phenidone."

A list of the sales made by the plaintiff company during the period from June 19, 1953, to January 27, 1954, received in evidence as plaintiff's exhibit 2, shows that, of the 49 sales made during that period, 13 were in quantities of 1 ounce, and all but 8 sales were in quantities of 5 pounds or less.

The 49 sales were to 35 persons or firms. At the time the litigation here involved arose, plaintiff caused to be sent to each of such persons or firms affidavits, with certain portions in blank to be filled in by the recipients, stating the disposition of the Phenidone, the sales of which are listed in plaintiff's exhibit 2.

The record shows that 14 affidavits (which were received in evidence as plaintiff's exhibits 7–20, inclusive) were returned to plaintiff, 5 persons or firms did not reply, 5 could not be located, 3 replied by letter instead of by affidavit (the said letters not being received in evidence), 3 replied by letter, stating they had no record of the disposition of the merchandise, and 3 witnesses testified orally concerning the disposition of the merchandise made by 4 of the remaining 5 firms.

Consequently, there is evidence as to the disposition made by 18 of the 35 firms who purchased Phenidone from the plaintiff company during the period in question. These 18 firms were the purchasers in 30 sales. Of these sales, the evidence shows that the Phenidone involved in 15 was wholly used for experimental and testing purposes; in 6, it was used partly for experimental and partly for other purposes; in 1, it was used partly by the purchaser in the preparation of photographic developers for its own use and partly resold to others without change; in 1, it was resold as it was; and, in 7, it was used by the purchaser for its own purposes.

It must be noted that the 7 sales last enumerated were each in quantities of 100 pounds or more at the price of $11.90 claimed by the plaintiff herein to represent the United States selling price of the merchandise. It would appear, therefore, that of the 23 sales in lesser quantities, 15 were used for experimental and testing purposes, and 6 partly for those purposes.

Considering the situation with respect to the importation of the product at the times in question, that is to say, that it was a product new to this market, and of its nature required testing by prospective purchasers prior to the purchase of any substantial quantities, together with the foregoing breakdown of the actual sales made, I am satisfied that the evidence establishes that by far the greater portion of sales made in the United States at the pertinent times was for experimental and testing purposes, as plaintiff contends.

The very words "ordinary course of trade" suggest buying and selling for use or resale. The purchase of comparatively small quantities for experimental or testing purposes is outside the area encompassed by the term, and I am satisfied that sales in quantities of 5 pounds or less should be disregarded in the determination of the United States selling price of the merchandise as not having been made in the ordinary course of trade. *Cf. United States v. H. Muehlstein & Co.*, 42 Cust. Ct. 760, A.R.D. 106.

In this view of the matter, there are only eight sales of those enumerated in plaintiff's exhibit 2 which are to be considered as having been made "in the usual wholesale quantities and in the ordinary course of trade." One of these was for 25 pounds at a price of $13.90 per pound, and 7 were of quantities of 100 pounds or more at a uniform price of $11.90 per pound.

Applying the applicable "major portion of sales or offers for sales" rule to this situation (*cf. F. S. Whelan & Sons v. United States*, 39 C.C.P.A. (Customs) 168, C.A.D. 482, and cases therein cited), the usual wholesale quantities called for by the statutory definition are quantities of 100 pounds or more, the United States selling price of which was $11.90 per pound. I, therefore, find that amount to be the United States selling price of the Phenidone involved herein.

This leaves for consideration only the question of the deductions allowed to be made by the statute from the said United States selling price. These are (1) duty, (2) cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, (3) profits not to exceed 8 per centum, and (4) a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods. The merchandise at bar, and prototype merchandise upon which United States value is based, having been secured by purchase, the question of commission is not involved.

The parties have agreed that 21 cents per pound represents the correct amount of the allowance of cost of transportation and insurance and other necessary expenses specified in the statute.

Plaintiff called to the stand the certified public accountant who kept the books and accounts for the plaintiff company at the times here pertinent. On the basis of the $11.90 selling price, the witness stated that, from the books of account and additional information furnished him, he had computed the general expenses incurred by the plaintiff company in connection with Phenidone to be 18.83 per centum. Inasmuch as this figure is in excess of the amount allowed by the statute, 8 per centum of $11.90, the latter represents the maximum allowance, or $0.952 per pound.

The same witness calculated the profit on the basis of the $11.90 selling price as 62 cents, which, being less than the statutory allowance of 8 per centum, is to be taken as the profit item called for.

The duty involved is 7 cents per pound and 45 per centum ad valorem under paragraph 28 of the Tariff Act of 1930.

A calculation of the United States value, therefore, proceeds as follows (*cf. United States v. Beer & Co.*, 15 Ct. Cust. Appls. 140, T.D. 42215) :

| | | |
|---|---:|---|
| United States selling price | $11.90 | per pound |
| Less necessary expenses | .21 | " |
| | 11.69 | " |
| Less profit on $11.90 per pound | .62 | " |
| | 11.07 | " |
| Less general expenses on $11.90 per pound | .952 | " |
| | 10.118 | " |
| Less specific duty at 7 cents per pound | .07 | " |
| | 10.048 | " |
| Less duty at 45 per centum ad valorem. (Arrived at by dividing 10.048 by 1.45, the resulting figure—$6.929—being the value less the 45 per centum duty) | 3.119 | " |
| United States value | $6.929 | " |

On the entire record before me, I find as facts:

(1) That the merchandise involved in these appeals for reappraisement is Phenidone, a photographic developing agent, exported from England during the period between July 1, 1953, and February 10, 1954.

(2) That, at the times of exportation here involved, such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of the country of exportation, either for home consumption or for exportation to the United States.

(3) That, at the said times, such merchandise was freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, in the usual wholesale quantities and in the ordinary course of trade.

(4) That the ordinary course of trade in the offer and sale of such merchandise under such conditions was the purchase and sale of such merchandise for use or for resale.

(5) That the offer and sale of comparatively small quantities of such merchandise for experimental and testing purposes was not in the ordinary course of trade.

(6) That the usual wholesale quantities in which such merchandise was offered for sale under the conditions expressed in finding of fact No. (3), *supra*, were quantities of 100 pounds or more.

(7) That the price at which such merchandise was freely offered for sale under the conditions expressed in finding of fact No. (3) was

$11.90 per pound, and that the said price, less allowances for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, and profits and general expenses not exceeding 8 per centum each, was $6.929 per pound.

I conclude as matters of law:

(1) That there was no foreign or export value for merchandise such as or similar to the Phenidone at bar.

(2) That the United States value of such merchandise, as defined in section 402(e), Tariff Act of 1930, as in existence at the times here pertinent, was $6.929 per pound.

Judgment will issue accordingly.