(A.R.D. 169)

United States *v.* Clayton Chemical & Packaging Company

Entry No. 635, etc.

Second Division, Appellate Term

(Decided March 25, 1964)

*John W. Douglas,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the appellant.

*Smith Thompson* and *Brooks & Brooks* (*J. Joseph McDermott* of counsel) for the appellee.

Before Lawrence, Rao, and Ford, Judges

Ford, Judge: These are applications for review of the decision of the trial judge sitting in reappraisement, reported in 49 Cust. Ct. 409, Reap. Dec. 10347. The cases listed in schedule "A," annexed hereto and made a part hereof, were consolidated for the purpose of trial and represent eight shipments of a photographic developing agent, a coal-tar product, known by the trade name of "Phenidone,"

which were imported from England during the period between July 1, 1953, and February 10, 1954. The merchandise was appraised on the basis of United States value, as defined in section 402(e) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, at values ranging from $15.87 to $24.11 per pound. Counsel for the respective parties are in agreement that the correct basis of value for the merchandise involved is United States value. The dispute arises as to the correct amount or amounts which represent said value.

The record establishes that Phenidone is an ingredient used in photographic developers; that, prior to January 1953, said merchandise had not appeared on the United States market; that appellee company used the imported Phenidone in the manufacture of several of its products and also offered it for sale to anyone wishing to buy.

It further appears from the record that, in June 1953, the appellee company, by arrangement with the English manufacturer and exporter, became the exclusive American importer of Phenidone and that, since the product was new to the market, it was necessary for the appellee to do certain promotional work, including securing publicity, contacting those who might be consumers of the product, and disseminating information concerning its nature and availability; that appellee sent letters to possible users, a copy of which was received as plaintiff's exhibit 1, which solicited parties to "send your order for a sample quantity of Phenidone * * *"; that, in order to initially attract orders from said parties or firms, appellee company offered Phenidone for sale in quantities as small as 1 ounce.

A list of sales made by appellee company during the period from June 19, 1953, to January 27, 1954, was received in evidence as plaintiff's exhibit 2. This exhibit shows that, of the 49 sales made during that period, 13 were in quantities of 1 ounce, and all but 8 were in quantities of 5 pounds or less. The 49 sales were made to 35 persons or firms. At the time of litigation, appellee caused to be sent to each of such persons or firms affidavits, with certain blank portions to be filled in by the affiant, telling the disposition of the Phenidone purchased by them. The record establishes that 14 affidavits, received in evidence as plaintiff's exhibits 7 through 20, inclusive, were returned to appellee, 5 persons or firms did not reply, 5 could not be located, 3 replied by letter instead of affidavits, 3 replied by letter, stating they had no record of the disposition of the merchandise, and 3 witnesses testified orally concerning the disposition made of the merchandise by 4 of the remaining 5 parties or firms. Consequently, there is evidence as to the disposition made by 18 of 35 persons or firms who purchased Phenidone from appellee company during the period in question. These 18 persons or firms represent the purchasers in 30 sales. Of these sales, the evidence shows that the Phenidone involved in 15 was.

wholly used for experimental and testing purposes; in 6, it was used partly for experimental and partly for other purposes; in 1, it was used partly by the purchaser in the preparation of photographic developers for its own use and partly sold to others without change; in 1, it was resold as purchased; and, in 7, it was used by the purchaser for its own purposes. These 7 sales were in quantities of 100 pounds or more at the price of $11.90, claimed by appellee herein to represent the United States selling price of the merchandise. The parties have agreed that 21 cents per pound represents the correct amount for the allowance of cost of transportation, insurance, and other necessary expenses specified in the statute.

The accountant for the importing company testified that, on the basis of the $11.90 selling price, he had computed the general expenses incurred by appellee to be 18.83 per centum.[1] The same witness calculated the profit based on the $11.90 selling price as 62 cents.[2]

The court below concluded that sales in quantities of less than 100 pounds were not made in the ordinary course of trade and, based upon the foregoing and the agreement of the parties that the basis of appraisement is United States value, as defined in section 402(e), *supra*, found said value to be $6.929. The calculation of this value was set forth as follows:

A calculation of the United States value, therefore, proceeds as follows (*Cf. United States* v. *Beer & Co.*, 15 Ct. Cust. Appls. 140, T.D. 42215):

| | | |
|---|---|---|
| United States selling price | $11.90 | per pound |
| Less necessary expenses | .21 | " |
| | 11.69 | " |
| Less profit on $11.90 per pound | .62 | " |
| | 11.07 | " |
| Less general expenses on $11.90 per pound | .952 | " |
| | 10.118 | " |
| Less specific duty at 7 cents per pound | .07 | " |
| | 10.048 | " |
| Less duty at 45 per centum ad valorem. (Arrived at by dividing 10.048 by 1.45, the resulting figure—$6.929—being the value less the 45 per centum duty) | 3.119 | " |
| United States value | $6.929 | " |

We are in agreement with the trial court that sales of 5 pounds or less, under circumstances such as are involved herein, were not

---

[1] Inasmuch as the general expenses were calculated to be 18.83%, which is in excess of the amount allowed by statute, 8% of $11.90, the amount of $0.952, representing the maximum statutory allowance, was allowed.

[2] The profit of 62 cents, being less than the statutory allowance of 8%, was taken as said profit.

made in the ordinary course of trade. As indicated in *United States v. H. Muelstein & Co.*, 42 Cust. Ct. 760, A.R.D. 106, where small quantities are sold for testing purposes, it is reasonable to infer that said sales are not made in the ordinary course of trade. The import of the phrase, "ordinary course of trade," as used in section 402(e), *supra*, suggests buying and selling for use or resale. Sales for testing or experimental purposes are, therefore, outside the scope of such phrase. The 8 remaining sales cover 1 sale of 25 pounds at a price of $13.90 per pound, and 7 sales of 100 pounds or more at a price of $11.90 per pound. Under the "major portion of sales" rule, as enunciated in *F. S. Whelan & Sons v. United States*, 39 CCPA 168, C.A.D. 482, and cases cited therein, the usual wholesale quantity applicable to the merchandise involved herein would be 100 pounds or more.

The admission of the affidavits, plaintiff's exhibits 7 through 20, was assigned as error by appellant. Based upon the record herein, we find no merit to this assignment. Counsel for appellant strenuously argues that the record is replete with objections as to the admissibility of plaintiff's exhibits 7 through 20. It is also contended that while counsel for the Government made no objection at the time of their receipt in evidence, it related only to the form and not to their admissibility. This latter contention is not supported by the record or the conduct of counsel after the exhibits were actually received and marked in evidence. If counsel for appellant was still of the opinion that the exhibits were not admissible, after the trial judge received them, a statement to that effect should have been made or an exception taken. Neither course was followed in this case. Accordingly, the court may and is, in fact, required to consider these exhibits.

Based upon the foregoing considerations, this court finds the following as facts:

(1) That the merchandise involved in these appeals for reappraisement is Phenidone, a photographic developing agent, exported from England during the period between July 1, 1953, and February 10, 1954.

(2) That, at the time of exportation here involved, no similar competitive article was manufactured in the United States.

(3) That, at the said times, previously imported merchandise was freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, in the usual wholesale quantities and in the ordinary course of trade.

(4) That the ordinary course of trade in the offer and sale of such merchandise under such conditions was the purchase and sale of such merchandise for use or for resale.

(5) That the offer and sale of comparatively small quantities of

such merchandise for experimental and testing purposes was not in the ordinary course of trade.

(6) That the usual wholesale quantities in which such merchandise was offered for sale under the conditions expressed in finding of fact No. (3), *supra*, were quantities of 100 pounds or more.

(7) That the price at which such merchandise was freely offered for sale under the conditions expressed in finding of fact No. (3) was $11.90 per pound, and that the said price, less allowances for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, and profits and general expenses not exceeding 8 per centum each, was $6.929 per pound.

The court, therefore, concludes that the United States value of such merchandise, as defined in section 402(e), Tariff Act of 1930, as in existence at the times here pertinent, was $6.929 per pound.

The decision and judgment of the trial court are, therefore, affirmed. Judgment will be entered accordingly.