(R.D. 11694)

Clayton Chemical & Packaging Company *v.* United States

Entry No. 635, etc.

(Decided on remand February 13, 1970)

*Smith Thompson; Brooks & Brooks*, co-counsel; *Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel), associate counsel; for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

WATSON, Judge: This case is before me by virtue of the reversal and remand by the U.S. Supreme Court (*Clayton Chemical & Packaging Co.* v. *United States*, 383 U.S. 821 (1966)), of the decision by the Court of Customs and Patent Appeals (*United States* v. *Clayton Chemical & Packaging Company*, 52 CCPA 111, C.A.D. 867 (1965)), which in turn was a reversal of the decision by the Second Division of this court (*United States* v. *Clayton Chemical & Packaging Company*, 52 Cust. Ct. 620, A.R.D. 169 (1964)), affirming the decision by the

single judge in *Clayton Chemical & Packaging Company* v. *United States*, 49 Cust. Ct .409, Reap. Dec. 10347 (1962).

The involved merchandise consists of eight shipments of a photographic developing agent known by the trade name of Phenidone, exported from England between July 1, 1953 and February 10, 1954. The importations were appraised on the basis of United States value (section 402(e) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938).

It was stipulated between the parties that United States value is the proper basis of appraisement, the dispute here being as to the correct amount or amounts representing said value. The Government primarily contends that the appraised values, ranging from $15.87 to $24.11 per pound, are the correct values of the merchandise and, alternatively, that the correct United States value for each shipment is $16.77 per pound. Plaintiff contends that the correct United States value for each shipment is $6.929 per pound, representing the gross statutory United States value of $11.90 per pound less statutory deductions (Reap. Dec. 10347, *supra*).

Section 402(e) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, the basis of appraisement, provides as follows:

> (e) United States Value.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

Essentially, it is the contention of the plaintiff here, as was the case in the trials below, that sales of five pounds or less of Phenidone were made for experimental or testing purposes and that such sales in experimental quantities are not to be considered in determining the usual wholesale quantities in the ordinary course of trade. Appraisement of the involved merchandise was based upon sales in one ounce quantities, considered to be the usual wholesale quantities in the ordinary course of trade. Plaintiff maintains that the usual wholesale quantities in which such merchandise was offered for sale in the ordinary course of trade were quantities of 100 pounds or more and that

appraisement of the merchandise should be determined upon the basis of such sales at a price of $11.90 per pound.

In support of the claimed value for the imported merchandise, plaintiff offered in evidence certain affidavits from various buyers in the United States to establish that sales in quantities of five pounds or less were sold for experimental or testing purposes only (exhibits 7 through 20). Objection to the admission of these affidavits in evidence was made by counsel for the defendant. The question of the admissibility of these affidavits will be passed upon in subsequent discussion herein.

For disposition and determination of the proper value of the involved merchandise for appraisement purposes, it is deemed necessary to recapitulate the proceedings and decisions in prior litigation as noted below.

In *Clayton Chemical & Packaging Company* v. *United States*, 49 Cust. Ct. 409, Reap. Dec. 10347 (1962), the court rendered judgment for the plaintiff, sustaining the importer's contention that all but eight sales were made in quantities of five pounds or less for experimental or testing purposes. The trial judge held such sales were not "in the ordinary course of trade", and should be disregarded in the determination of United States value. The court further held that of the eight sales which were made in the ordinary course of trade, seven were of quantities of 100 pounds or more at a uniform price of $11.90 per pound. The court thereupon applied the "major portion of sales" rule (*F. S. Whelan & Sons* v. *United States*, 39 CCPA 168, C.A.D. 482 (1952)) and held the usual wholesale quantity was 100 pounds or more and that, accordingly, the gross statutory United States value was $11.90 per pound and that after statutory deductions, the statutory United States value was $6.929 per pound. In arriving at his decision, the single judge relied in part on the 14 affidavits, reference to which has been previously made.

In *United States* v. *Clayton Chemical & Packaging Company*, 52 Cust. Ct. 620, A.R.D. 169 (1964), the Second Division, Appellate Term of this court agreed with the trial court in all respects and affirmed its decision, holding as did the trial court, that the offer and sale of comparatively small quantities of such merchandise for experimental and testing purposes were not in the ordinary course of trade.

In *United States* v. *Clayton Chemical & Packaging Company*, 52 CCPA 111, C.A.D. 867 (1965), our appellate court reversed the decision of the Customs Court in A.R.D. 169. The basis of the decision was that the 14 affidavits above referred to, had been erroneously admitted in evidence because the importer had not made a proper showing that the attendance of the affiants could not reasonably be had. The court then held that without the affidavits there was not substantial

competent evidence to sustain the judgment of the Customs Court. In its decision, our appellate court, at page 121, stated:

> * * * *The sales in quantities of five pounds or less and in one ounce quantities were frequent and in considerable number.* Of approximately 35 different purchasing firms listed, 12 firms purchased in one ounce quantities, one making two purchases in that amount. *The frequency and consistency of these purchases would tend to indicate that sales of five pounds or less were in the ordinary course of trade.* The list of sales discloses that 49 sales were made in quantities varying from one ounce to 200 pounds. The quantity in which the greatest number of sales were made was one ounce, there being 13 sales in that quantity purchased at $29.28 per pound. *We find substantial evidence to support the conclusion* that sales in one ounce quantities were the usual wholesale quantity. [Emphasis supplied.]

Of prime consideration in the disposition of this case is whether or not the affidavits, offered in evidence by the plaintiff (exhibits 7 through 20) to establish that sales of less than 25 pounds were for experimental or testing purposes and therefore not "in the ordinary course of trade", and accordingly, cannot be considered for valuation purposes, should be received in evidence. In my opinion, the Government's objection to the admissibility of said affidavits, for the reasons heretofore advanced by our appellate court (*United States* v. *Clayton Chemical & Packaging Company*, C.A.D. 867, *supra*) in concluding that the affidavits "were erroneously admitted in evidence", should be sustained. Accordingly, I find that the affidavits in question are not admissible and should be stricken from the record.

The question remains whether the plaintiff on remand has now presented such "oral testimony in lieu of the excluded affidavits" as would constitute substantial, competent, and probative evidence sufficient "to fill the evidentiary void created by the holding that the affidavits were inadmissible." (*Clayton Chemical & Packaging Co.* v. *United States*, 383 U.S. 821, *supra*.) In my opinion, plaintiff has failed in its burden of proof.

In an attempt to present "such oral testimony in lieu of the excluded affidavits" "to fill the evidentiary void" referred to by our appellate court and the Supreme Court, as heretofore noted, plaintiff on remand called five witnesses who testified regarding the ultimate use of the involved merchandise. A review of their testimony indicates that plaintiff's witness, Ericson, a commercial photographer, testified that he purchased one pound of Phenidone and that he used it in the ordinary course of business for commercial purposes. The fact that the witness also testified that he tested the merchandise in developing films and prints, does not, in my opinion, gainsay the fact that he employed the product in commercial pursuits.

Plaintiff's second witness, Anton, an investigator, testified that at the request of the attorney for the importer, he conducted certain investigations to ascertain the location whether there were then available certain purported purchasers of one ounce and one pound lots of Phenidone. The results of his efforts are delineated in the reports as given in exhibits 21, 22, and 23. The objection of the Government to the admission of these affidavits is sustained. They fail to support a finding that the affidavits previously offered (exhibits 7 through 20) should have been received in evidence or that, as contended by the plaintiff, sales in quantities of five pounds or less were for experimental or testing purposes. As heretofore indicated, objection by the defendant to the admissibility of exhibits 7 through 20 has been sustained by our appellate court (C.A.D. 867, *supra*) and as heretofore indicated, I concur in that holding.

Of the remaining witnesses who testified regarding the ultimate use of the imported merchandise, plaintiff's witness, Conrad, testified that he bought and sold the imported product for purely experimental purposes.

Plaintiff's witness Tefft, previously employed as a chemist by the Remington Rand Photographic Laboratories, a manufacturer of "materials for use in the diffusion transfer process" testified that his company had purchased two pounds of Phenidone to experimentally determine how it could be used in its particular photographic applications, and that they were used in making up various compositions including Phenidone and the various other things that went into processing solutions to ascertain "if they provided an improvement over existing materials that we were using."

Dr. Kurt Wolfson, vice-president in charge of research for the Anken Chemical & Film Corp., manufacturer of photographic papers and films, testified on behalf of the plaintiff that his firm purchased a total of five pounds of Phenidone for experimental purposes. He stated that at the time of purchase, his firm was making certain special developers for one specific product. He further stated that his firm used Phenidone in an attempt to find out whether what the firm intended to manufacture "will be good, and will keep, and will do what you expect it to do."

Plaintiff's witness, Powers, vice-president in charge of research and development for Powers Chemco Inc., manufacturer of photographic film, testified that his company purchased one ounce of Phenidone from the plaintiff in August 1953. He stated that he ordered the product in order to ascertain whether it might possibly be used in his business; that he did not use any of it for commercial purposes, did not resell it, and did not use it to make any product that his firm resold.

640

Upon cross-examination, Mr. Powers testified the sole purpose for the purchase by his company of Phenidone was to ascertain whether it could be used directly or indirectly for commercial purposes and that in evaluating the properties of Phenidone, he was evaluating the properties for a strictly commercial purpose. The witness stated that after testing the ounce of Phenidone in 1953, he concluded that it was not suitable in his business for commercial purposes.

From the testimony of plaintiff's witnesses heretofore indicated, it appears that of the five witnesses who testified regarding the use by them of the purchased Phenidone, one, Ericson, testified that he used it in the ordinary course of his business for commercial purposes; that the witness, Conrad, bought and sold it for purely experimental purposes; and that the testimony of the three remaining witnesses, all employed by firms engaged in commercial enterprises, disclosed that they were not using the product merely for experimental or testing purposes but that they were using the product commercially in the regular course of their business to ascertain its feasibility for strictly commercial purposes, either directly or in conjunction with other substances, in the ultimate manufacture of specific products which their companies intended to introduce, via sales, into the commercial field.

In my opinion, the oral evidence introduced in the present case has failed to supply the proof required of the plaintiff to establish that sales of the involved Phenidone were for experimental or testing purposes to support its claim that such sales were not in the ordinary course of trade and accordingly not to be considered for valuation purposes. On the other hand, it is well settled that the major portion, or greatest number of sales or offers for sale in the wholesale quantity constitutes the usual wholesale quantity. *Jenkins Brothers* v. *United States*, 25 CCPA 90, T.D. 49093 (1937); *United States* v. *Semon Bache & Co.*, 25 CCPA 387, T.D. 49466 (1938). Further, in determining the usual wholesale quantity in any given case, all sales in wholesale quantities must be considered. *Jenkins Brothers* v. *United States, supra; Lovell Dressel Co., Inc.* v. *United States*, 25 CCPA 64, T. D. 49064 (1937). An examination of exhibit 2 herein, a list of sales of Phenidone by the plaintiff, in the ordinary course of trade, discloses that 49 sales were made in quantities varying from one ounce to 200 pounds. The list reveals that the quantity in which the greatest number of sales were made was one ounce, there being 13 sales in that quantity. A schedule of prices for Phenidone (exhibit A), which was admittedly used by the plaintiff in quoting prices to customers, establishes the price at which anyone could buy the merchandise in one ounce quantities. It further appears that sales in one ounce quantities "were frequent and in considerable number." As stated by our appellate court in C.A.D. 867, *supra*, page 121:

\* \* \* The frequency and consistency of these purchases would tend to indicate that sales of five pounds or less were in the ordinary course of trade. \* \* \*

The testimony of plaintiff's witness, Rautboard, further establishes that the purchasers listed on plaintiff's exhibit 2 are firms that buy in wholesale quantities for their own use or for resale. In accordance with the major portion of sales rule, sales of the merchandise in one ounce quantities became the "usual wholesale quantity". One ounce was the quantity upon which the appraiser based his finding of United States value of the merchandise. There is no competent evidence adduced herein which would establish that sales of Phenidone in quantities of five pounds or less were not in the ordinary course of trade and therefore not to be considered in determining the usual wholesale quantities. Plaintiff in this case has failed to overcome the presumption of correctness attaching to the appraisement of the involved merchandise.

The plaintiff, in support of the proposition that sales in small quantities for testing purposes were not sales in the ordinary course of trade, directs our attention to the holding of the court in *United States* v. *H. Muehlstein & Co.*, 42 Cust. Ct. 760, A.R.D. 106 (1959). Our appellate court (C.A.D. 867), in finding the principle in the *Muehlstein* case, *supra*, not applicable in the case at bar, stated, pages 121–122:

\* \* \* It is observed, however, that in *Muehlstein* there was a total of 235 sales. Only three sales were in small quantities, which the court considered fugitive or sporadic. In the instant case there were 49 sales, only seven of which were considered by the court below in determining the usual wholesale quantity applicable to the merchandise involved herein. It would be most difficult to reconcile with reason a conclusion that 42 out of 49 sales, under the state of record before us, were fugitive or sporadic \* \* \*.

I am in agreement with the above conclusion of our appellate court and find nothing in the present record which would persuade me to come to a different conclusion. For all of the reasons heretofore advanced, and based upon the record in the case at bar, I find and accordingly hold that there is no substantial evidence to rebut the statutory presumption of correctness attaching to the appraisement of the imported merchandise.

The court makes the following findings of facts:

1. The merchandise involved consists of a coal tar photographic chemical compound known and described as Phenidone, exported from England between July 1, 1953 and February 10, 1954.

2. That, at the time of exportation here involved, such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of the country of exportation, either for home consumption or for exportation to the United States.

3. That at the time of exportation of the imported merchandise, such or similar merchandise was freely offered for sale and sold for domestic consumption, packed ready for delivery, in the principal market of the United States, to all purchasers in the usual wholesale quantities and in the ordinary course of trade.

4. That the merchandise was so sold in quantities of one ounce to 200 pounds at varying prices.

5. That the usual wholesale quantity at which the merchandise was sold in the ordinary course of trade under the conditions expressed in finding of fact No. 3, *supra*, was in the quantity of one ounce which constituted the major portion of such sales.

The court finds as matters of law:

1. That there was no foreign or export value for merchandise such as or similar to the Phenidone at bar.

2. That United States value, as that value is defined in section 402(e) of the Tariff Act of 1930, as amended, is the proper basis for the appraisement of the merchandise here involved.

3. That such values are the appraised values in this case.

Judgment will be rendered accordingly.