CLAYTON CHEMICAL & PACKAGING COMPANY

v.

UNITED STATES.

A.R.D. 292; Reappraisement 290448–A.

United States Customs Court,
Special Division.

Aug. 5, 1971.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz, New York City, of counsel), for appellant.

L. Patrick Gray, III, Asst. Atty. Gen. (Harold L. Grossman, New York City, trial attorney), for appellee.

Before LANDIS, MALETZ and NEWMAN, JJ.

LANDIS, Judge.

This application for review is the sequence of a second round of trial proceedings[1] as a result of the reversal and remand by the Supreme Court of the United States[2] of the Court of Customs and Patent Appeals[3] which previously had reversed the appellate term of this court,[4] which theretofore had affirmed the trial court.[5] The proceedings are in reappraisement of the United States value of a then newly developed product called Phenidone, used in photography, manufactured and exported from Eng-

land between July 1, 1953 and February 10, 1954.[6]

The single judge in his decision on remand entered judgment sustaining the appraised United States values. Appellant's allegations of error, in sum, assign that, as a matter of law, the facts do not support the judgment.

Underlying this dispute is the fact that, at the times relevant to the dates of exportation, there was no established market in the United States for the Phenidone when it was first promoted as a new improved agent or compound or formula used by photographers to develop photographic prints. It is established that, at the times relevant to the periods of exportation, the Phenidone was freely offered for sale and sold to all purchasers at various prices depending on quantity purchased. The proceedings and record reflect the difficulty that attends valuation of a newly developed product when it is offered for sale to all purchasers and sold at various prices, depending on the quantity purchased, in a relatively new and commercially untested market, on United States value basis, defined in section 402a(e) of the Tariff Act of 1930, as amended, 19 U.S. C. section 1402(e) (1964 ed.), as follows:

(e) The United States value of imported merchandise shall be the price at which such or similar imported mer-

1. Clayton Chemical & Packaging Company v. United States, 64 Cust.Ct. 634, R.D. 11694 (1970).

2. Clayton Chemical & Packaging Co. v. United States, 383 U.S. 821, 823, 86 S.Ct. 1128, 16 L.Ed.2d 288 (1966).

3. United States v. Clayton Chemical & Packaging Company, 357 F.2d 1009, 52 CCPA 111, C.A.D. 867 (1965).

4. United States v. Clayton Chemical & Packaging Company, 52 Cust.Ct. 620, A.R.D. 169 (1964).

5. Clayton Chemical & Packaging Company v. United States, 49 Cust.Ct. 409, Reap. Dec. 10347 (1962).
 Appellant (plaintiff below) won the first round of trial and review in this court. On appeal, the Court of Customs and Patent Appeals reversed (two judges dissenting), on the ground that certain affidavits (exhibits 7 through 20) admitted in evidence over objection of the United States and relied on to support the judgment of this court, were inadmissible. The Court of Customs and Patent Appeals denied importer's petition for rehearing *inter alia* asking remand to fill the evidentiary void created by holding the affidavits inadmissible in evidence. The United States Supreme Court granted a writ of certiorari and reversed, holding it was error to refuse "to remand the case to the Customs Court for further proceedings".

6. Eight shipments, entered in that period, are covered by the three appeals for reappraisement consolidated herein for trial.

chandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

On the above basis, which the parties have stipulated is the correct basis for reappraisement, customs appraised the Phenidone at dutiable United States values ranging from $15.87 per pound to $24.11 per pound. Those values apparently represent the prices (less the section 402a(e) statutory deductions) at which the Phenidone was freely offered and sold to all purchasers in one-ounce quantities. Appellant in all the proceedings had herein, has continuously claimed that, at the times relevant to the periods of exportation, the United States value of Phenidone was $6.929 per pound. The claimed United States value represents the price, less deductions allowed by section 402a(e), *supra*, at which the Phenidone was freely offered for sale and sold to all purchasers buying a quantity of 100 pounds or more. The prices for the respective quantities are not in dispute. Both sides, in this second round of proceedings, appear to accept the statutory price deductions allowed by this court in sustaining, on the first round, the claimed United States value.

 The overriding issue throughout these proceedings has been and remains whether, as the statute puts it, "in the ordinary course of trade," cf. United

States v. Nelson Bead Co., 42 CCPA 175, 183, C.A.D. 590 (1955), the Phenidone was freely offered and sold to all purchasers in "usual wholesale quantities" of one ounce or instead in "usual wholesale quantities" of 100 pounds or more. There can be only one "usual wholesale" quantity, F. S. Whelan & Sons v. United States, 39 CCPA 168, 172, C.A.D. 482 (1952), and, on this record, the United States value of the Phenidone is the price or prices for that wholesale quantity which, as a matter of law, is the usual wholesale quantity sold to all purchasers in the ordinary course of trade.

Appellant in these proceedings has contended and sought to establish that the offerings and sales of Phenidone in quantities of one ounce up to and including five pounds, were offerings for sample quantities; that the sales of these quantities were for experimental or testing purposes; that such offerings and sales, as a matter of law, were not in the ordinary course of trade, cf. United States v. H. Muehlstein & Co., 42 Cust.Ct. 760, A.R.D. 106 (1959); and that the offerings and sales of Phenidone in quantities of five pounds or less are, therefore, irrelevant to determination of the "usual wholesale quantity". Cf. United States v. Fisher Scientific Company, 40 CCPA 164, C.A.D. 513 (1953).

In the first round of these proceedings this court sustained the claimed United States value in reliance on certain affidavits (exhibits 7 through 20) of the buyers of five pounds or less listed on exhibit 2, admitted in evidence over the government's objections, substantially establishing that they purchased those quantities for use in experimenting with photographic developers, and cited *Muehlstein, supra*, as legal precedent that such sales in small quantities for testing purposes were not in the ordinary course of trade. The Court of Customs and Patent Appeals reversed,[7] (two judges dissenting) and held that the affidavits were inadmissible because the conditions for admission under 28

---

7. 52 CCPA 111, C.A.D. 867 (1965).

U.S.C. section 2633 (1964 ed.), namely, that the attendance of the affiants could not reasonably be had on trial, had not been established and, without the affidavits, there was no substantial evidence of record to rebut the statutory presumption that the United States values of the imported merchandise were the values found by the appraiser.

In argument before the United States Supreme Court the Solicitor General suggested that the Court of Customs and Patent Appeals may have refused to remand the case to the Customs Court because it deemed the affidavits and any evidence of experimental use irrelevant to the question of United States value. The Supreme Court's reply in reversing and remanding was that "[t]he court did not so hold, and the tenor of its opinion is to the contrary" (383 U.S. at page 823, 86 S.Ct. at page 1130). The opinion of the Supreme Court is to the effect that petitioner (appellant) should have an opportunity before the trial court to establish its contentions by filling the evidentiary void created by the ruling on appeal which excluded the affidavits.

Appellant, on remand, having introduced additional testimony, then purported to show that the attendance of certain affiants could not reasonably be had at the remanded proceedings as a basis for offering the affidavits (exhibits 7 through 20) in evidence. The United States objected, and decision was reserved.

The single judge in his opinion decision sustained the objection of the United States to the admission of the affidavits in evidence. Appellant *inter alia* alleges that the single judge erred in excluding the affidavits from evidence, and in deciding and entering judgment contrary to the facts and contrary to law. Appellant's basic position is that even without the affidavits "the additional evidence establishes that in the photographic developer industry, sales of less

than 5 lbs. are for experimental or testing purposes, and therefore [as a matter of law, United States v. H. Muehlstein & Co., *supra*] not 'in the ordinary course of trade,' and cannot be considered for valuation purposes." (Appellant's brief, page 4.)

We deem it unnecessary to review the ruling excluding the affidavits in light of the ruling of the Court of Customs and Patent Appeals (52 CCPA at 120) and the remand by the Supreme Court to permit the petitioner (appellant here) to "have an opportunity to establish its contentions by other types of evidence that may be available to it * * *." 383 U.S. at 823, 86 S.Ct. at page 1130. In short, the holding of the Court of Customs and Patent Appeals that the affidavits were inadmissible represents the law of the case, and the remand by the Supreme Court was solely to permit appellant to adduce evidence other than the affidavits in support of its contentions. Moreover, the cumulative effect of the affidavits upon the present record would only be to establish the same facts orally testified to by the witnesses. Assuming it was error to exclude the affidavits, it was harmless error, insufficient of itself to require reversal. U. S. Vitamin Corp. v. United States, 43 CCPA 44, C.A.D. 607 (1956). Accordingly, we proceed to review the oral testimony and other relevant evidence "in lieu of the excluded affidavits", 383 U.S. at 823.

There is oral testimony that the Phenidone sold in quantities of five pounds or less was purchased for experimental or testing purposes, for the most part, to determine its "feasibility for strictly commercial purposes."[8] The single judge concluded that the oral testimony did not, however, "establish that sales of the involved Phenidone were for experimental or testing purposes to support its claim that [as a matter of law] such sales were not in the ordinary course of trade and accordingly not to be con-

8. Clayton Chemical & Packaging Company v. United States, 64 Cust.Ct. 634, 640, R.D. 11694 (1970).

sidered for valuation purposes." [9] For the reasons we discuss, we affirm.

◼ We believe it pertinent to observe with regard to the sale of Phenidone in quantities of five pounds or less that the record does not establish that those quantities were sold otherwise than in the ordinary course of trade. The ordinary course of trade means, quite simply, the "normal and usual practices which obtain in the offer for sale [and sale] of merchandise such as that under appraisement * * * in the particular trade involved." United States v. E. H. Corrigan, 36 Cust.Ct. 639, 644, A. R.D. 67 (1956). This is entirely in accord with the *Muehlstein* case, *supra*, upon which appellant so strongly relies.

Where it appears that certain imported merchandise is ordinarily sold to consumers in bulk quantities, but some sales are made of small lots for testing purposes, *it is reasonable to infer that said sales for testing purposes are not made in the ordinary course of trade* and, therefore, should not be considered in determining usual wholesale quantities. [42 Cust.Ct., at page 761, emphasis added.]

◼ What the *Muehlstein* case held is important to appellant's case and should be discussed, even if briefly. The *Muehlstein* case did not, in our opinion, hold that merchandise purchased in small lots for testing purposes was, as a matter of law, not sold in the ordinary course of trade. What it did hold was that upon consideration of all relevant sales (namely, 235 sales, largely of bulk quantities), and testimony "that certain small quantities were *sold* [emphasis added] for testing purposes", it was reasonable to infer that the three sales for testing purposes were not made in the ordinary course of trade. The *Muehlstein* case was decided, as a matter of law, on the facts and reasonable inferences which flowed from those facts. Cf. Hudson

Shipping Co., Inc. v. United States, 43 CCPA 19, 25, 26, C.A.D. 604 (1955). On this record, we can neither find nor reasonably infer that, at the times relevant to the periods of exportation, the Phenidone purchased in quantities of five pounds or less for testing purposes was, as a matter of law, not sold in the ordinary course of trade.

While there is evidence in the case at bar that the Phenidone sold in quantities of five pounds or less was purchased for experimental or testing purposes, there is no evidence that appellant *offered to sell or sold* the Phenidone in small quantities *only* for experimental or testing purposes. "*The law is not concerned with the persons who buy, but the manner in which they buy.*" United States v. Fisher Scientific Company, *supra*, 40 CCPA at page 169 [emphasis added.] We also perceive that the law is not concerned with the purpose for which persons buy, but the manner in which they buy and whether, in the context of this discussion, the purchase is of a wholesale quantity sold in the ordinary course of trade. Accordingly, we find that at the times relevant to the periods of exportation the offer and sale of Phenidone in quantities of five pounds or less, albeit purchased for experimental or testing purposes, was in the ordinary course of trade and, on this record, did not represent an unusual manner of merchandising a newly developed product in a commercially untested market. United States v. E. H. Corrigan, *supra*.

◼ Appellant argues that the only sales which can be considered in determining the usual wholesale quantities are those made in the ordinary course of trade at uniform prices. However, the record does not support appellant's factual premise for the argument, namely, that only wholesale quantities of 25 pounds or more were offered and sold at uniform prices.

There is no evidence that the sales of five pounds or less reflect different prices that could only come from "bar-

9. *Id.*

gaining", as appellant contends. Indeed, the evidence of the offers and sales is to the contrary.

The only evidence of sales is exhibit 2. This exhibit shows that of the various quantities sold, at the times relevant to the periods of exportation, the greatest number of sales of Phenidone were at the price per pound in wholesale quantities of one ounce. Under the greatest number of sales rule, the one-ounce quantity, therefore, was the "usual wholesale" quantity. Jenkins Brothers v. United States, 25 CCPA 90, T.D. 49093 (1937); United States v. Minkus, 21 CCPA 382, T.D. 46912 (1934).

We find as facts:

1. That, at the times of exportation from England between July 1, 1953 and February 10, 1954, the imported product (Phenidone) was a relatively new developed product.

2. That, at the times of exportation, such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of England either for home consumption or for exportation to the United States.

3. That, at the times of exportation to the United States, the Phenidone was offered and sold as a new improved agent or compound or formula used by photographers to develop photographic prints.

4. That, at the times of exportation, the Phenidone sold in quantities of five pounds or less was *purchased* to experiment with and test the Phenidone for commercial purposes.

5. That there is no evidence, that at the times of exportation, the Phenidone was *freely offered for sale or sold* in quantities of five pounds or less *only* for experimental or testing purposes.

6. That, at the times of exportation, the Phenidone was freely offered for sale and sold in quantities of five pounds or less in a manner no different from the manner in which the Phenidone was freely offered for sale and sold to all purchasers in quantities of 25 pounds or more.

7. That, at the times relevant to the periods of exportation, the Phenidone was freely offered for sale and sold in various quantities at various prices depending on the quantity purchased, and the greatest number of sales were in one-ounce quantities.

We conclude as a matter of law:

1. That, at the times of exportation, there was no foreign or export value for merchandise such as or similar to the Phenidone at bar.

2. That, at the times of exportation, the quantities in which the Phenidone was freely offered for sale and sold to all purchasers in the United States were wholesale quantities, and that the manner in which the Phenidone was freely offered for sale and sold was in the ordinary course of trade.

3. That, at the times of exportation, the Phenidone was freely sold to all purchasers in the United States in usual wholesale quantities of one ounce.

4. That United States value, as defined in section 402a(e) of the Tariff Act of 1930, as amended, is the proper basis for the appraisement of the Phenidone and that such values are the appraised values.

The judgment below is affirmed.

MALETZ and NEWMAN, JJ., concur.